EUGENE ORANGE    (IN PRO-PER)
NAME
#V-64598
PRISON NUMBER
KERN VALLEY STATE PRISON
P.O. BOX 5103
CURRENT ADDRESS OR PLACE OF CONFINEMENT

DELANO, CALIFORNIA  93216-5103
CITY, STATE, ZIP CODE

2254 ___ 1983 ___
FILING FEE PAID
Yes ___ No ✓
IFP MOTION FILED
Yes ✓ No ___
COPIES SENT TO
Court ✓ Pro Se ___

FILED
APR 2 8 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

EUGENE ORANGE
(FULL NAME OF PETITIONER)

**PETITIONER**

v.

A. HEDGEPETH, WARDEN
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

**RESPONDENT**

and

MR. JERRY BROWN
The Attorney General of the State of
California, Additional Respondent.

Civil No. **'08  CV 0767 BTM WMc**
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

**PETITION FOR WRIT OF HABEAS CORPUS**

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: _____
   San Diego, California Superior Court

2. Date of judgment of conviction: __February 10, 2005__

3. Trial court case number of the judgment of conviction being challenged: _____
   #SCN 165993

4. Length of sentence: __111 Years to Life__

CIV 68 (Rev. Jan. 2006)



CV

5. Sentence start date and projected release date: Sentence Start Date: 2/10/2005. Petitioner has no projected Date of Release.

6. Offense(s) for which you were convicted or pleaded guilty (all counts): 1st Degree Murder, 2, P.C. §187, and acquiring a credit card with intent to defraud, §484 e, Subdivision (c).

7. What was your plea? (CHECK ONE)
   (a) Not guilty      ☒
   (b) Guilty          ☐
   (c) Nolo contendere ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a) Jury       ☒
   (b) Judge only ☐

9. Did you testify at the trial?
   ☐ Yes  ☒ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    ☒ Yes  ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:
    (a) Result: Petition for Review was "DENIED."
    (b) Date of result (if known): 4/21/06.
    (c) Case number and citation (if known): D045936
    (d) Names of Judges participating in case (if known)

    (e) Grounds raised on direct appeal: #1. Due Process and Equal Protection on Fair Trial; #2. A Jury Trial by Proof Beyond & Reasonable - Doubt; #3. Fourth Amendment by Warrantless Entry and Search; #4. Harmful Error.

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
    (a) Result: Petition for Review was "DENIED."
    (b) Date of result (if known): July 26, 2006.
    (c) Case number and citation (if known): _____

    (d) Grounds raised: #1. Due Process and Equal Protection on Fair Trial; #2. A Jury Trial by Proof Beyond & Reasonable Doubt; #3. Fourth Amendment by Warrantless Entry and Search; #4. Harmful Error.

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

   (a) Result: "DENIED."

   (b) Date of result (if known):  Dated Denied: 12/04/2006.

   (c) Case number and citation (if known):  No. 06-6997

   (d) Grounds raised:  Fourth Amendment by warrantless Entry Search and use of inadmissible evidence.


## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
   ☐ Yes ☒ No

15. If your answer to #14 was "Yes," give the following information:

   (a) **California Superior Court** Case Number (if known): N/A

   (b) Nature of proceeding:  N/A

   (c) Grounds raised:  N/A

   (d) Did you receive an evidentiary hearing on your petition, application or motion?
   ☐ Yes ☒ No

   (e) Result:  N/A

   (f) Date of result (if known):  N/A


16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
   ☒ Yes ☐ No

      "Petition For Review." It was, "DENIED."

17. If your answer to #16 was "Yes," give the following information:

    (a) **California Court of Appeal** Case Number (if known): #D.045936

    (b) Nature of proceeding: Petition For Review.

    (c) Names of Judges participating in case (if known)

    (d) Grounds raised: #1. Due Process and Equal Protection on Fair Trial; #2. A Jury Trial By Proof Beyond & Reasonable Doubt; #3. Fourth Amendment by Warrantless Entry and Search; #4. Harmful Error.

    (e) Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes ☒No

    (f) Result: N/A

    (g) Date of result (if known): N/A

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☒ Yes ☐ No

19. If your answer to #18 was "Yes," give the following information:

    (a) **California Supreme Court** Case Number (if known):

    (b) Nature of proceeding: Petition For Review.

    (c) Grounds raised: #1. Due Process and Equal Protection on Fair Trial; #2. A Jury Trial By Proof & Reasonable Doubt; #3. Fourth Amendment by Warrantless Entry and Search; #4. Harmful Error.

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes ☒ No

    (e) Result: N/A

    (f) Date of result (if known): N/A

20.  If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

Petitioner DID file a Petition For Review, Which was DENIED.

_____

_____

_____

## COLLATERAL REVIEW IN FEDERAL COURT

21.  Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
☒ Yes ☐ No    (IF "YES" SKIP TO #22)

   (a)  If no, in what federal court was the prior action filed? _N/A_

   (i)  What was the prior case number? _____N/A_____

   (ii)  Was the prior action (CHECK ONE):

      ☐ Denied on the merits? N/A

      ☐ Dismissed for procedural reasons?  N/A

   (iii)  Date of decision: _N/A_

   (b)  Were any of the issues in this current petition also raised in the prior federal petition?
☐ Yes ☒ No

   (c)  If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
☐ Yes ☐ No    N/A

---

CAUTION:

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

CIV 68 (Rev. Jan. 2006)

cv

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. (e.g. what happened during the state proceedings that you contend resulted in a violation of the constitution, law or treaties of the United States.) If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: Due Process and Equal Protection. See: Attached pp.

Supporting FACTS: By the trial Court that admitted a large quantity of the Petitioner's prior record's or domestic violence, such "WILL" create so much prejudice against the Petitioner as to hender his trial by "Fundamentally and Totally," unfair, which is in violation of his "Constitutional Federal and State Rights," under the, "Due Process and Equal Protection Law," and all such evidence therefore is inadmissible pursuant to Common Law of the "United States of America", which the, "U.S. Supreme Court," never had held admission of propensity of evidence to prove the, "GUILT," of current offense, because, it violated the, "Due Process Clause and Equal Protection Clause of the Law," which its garanteed by both the State and Federal Constitution and the person's with similar situations must receive, and get, "Full and Fair Treatment, under the Law," and therefore, the trial court must not be arbitrary and its use based on a substantial and rational legitimate object to be - accomplished and in "Mr. Eugene Orange's" case, the State - must not infringe upon "Fundamental Constitutionally Protected Rights, by the Due Process Clause, and Equal Protection Clause," as it may and it, "WILL" require. Therefore, please be directed to the attached Exhibits herein.

Did you raise GROUND ONE in the California Supreme Court?

☒ Yes ☐ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): Petition for Review.

(2) Case number or citation: _____

(3) Result (attach a copy of the court's opinion or order if available): DENIED.

**(b) GROUND TWO:** Jury Trial By Proof Beyond Reasonable Doubt. See: Attached pp.

_____

_____

**Supporting FACTS:** The Prosecution by use & great and large quantities of evidence of the Petitioner's prior life records acts of domestic violence, it may show his propensity to due or commit such crime as murder, even that the prior act's there are not enough and/or sufficient by themselves, to prove "GUILT," of the charged crime(s) offenses. The law nevertheless sure permits the "Jury," to convict by the preponderance of the evidence rather than by the - "Proof Beyond a Reasonable Doubt, and the "Jury," instruction of "CALJIC," violated the Petitioner's Fundamental Rights," to be convicted and it may be even a mis-leading Jury on mis-description of the burden of proof; it's a structural error, and such evidence challenged instructions and it constitutes reversible error on the Jury verdict. Therefore, this Judgement ought to be reversed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND TWO in the California Supreme Court?**

☒ Yes ☐ No.

    If yes, answer the following:

    (1)   Nature of proceeding (i.e., petition for review, habeas petition): Petition for Review.

    (2)   Case number or citation: _____

    (3)   Result (attach a copy of the court's opinion or order if available): DENIED.

(c) **GROUND THREE**: Violation of the Fourth Amendment of the United States Constitution by a Warrantless Entry and Admission of Tainted Evidence. See: Attached pp.

**Supporting FACTS:** Any and all the evidence obtained on the warrantless entry has been tainted and the product of unlawfull search, and it must be suppressed as that of a fruit of a poisonous tree and because, there were no exigent circumstances to justify such, "Warrantless Entry and Search," it violated total and clear Rights of the Petitioner, under the "Fourth Amendment of the U.S. Constitution," which, are not to be subject of an unreasonable search and seizure and to be secure in their person's, house, papers, and by the absent of exigent circumstances that the threshold clearly may not reasonable be entered or crossed without proper and legal warrant, and also, by not showing any exigent circumstan's or emergency to prevent imminent danger to life, which there were, "NO," signs at all of any activities on, Petitioner's resident apertment - therfore, the claimed exigent was nothing but pure and manufactured pretext employed by the police, which it was a very poor excuse, because, no one had seen anyone around the apartment for many hours and the police had no - information or any other people could be, or might be, and it was based on nothing more than pure imagination and total specific articulable facts altogether meets its burden of showing the abuse of discretion and authority by the police deputies, and no clear and legal reason to justify this Warrantless- Entry, and search and seizure and for the prosecution to use any and all this, "Inadmissible Evidence."

---

Did you raise **GROUND THREE** in the **California Supreme Court**?

xx Yes ☐ No.

If yes, answer the following:

(1)  Nature of proceeding (i.e., petition for review, habeas petition): Petition for Review.

(2)  Case number or citation: _____

(3)  Result (attach a copy of the court's opinion or order if available): DENIED.

(d)    **GROUND FOUR:**    Ineffective Assistance of Appellate Counsel

Supporting FACTS: The issue of the two notes raised on Direct Appeal were never raised in California Supreme Court "Petition For Review" by Petitioner's Appellate Counsel After Appellate Court identified one possible ERROR that occurred at Petitioner's trial. An ERROR which is prejudicial and requires reversal of the judgement.

  See: Crawford v. Washington  541 U.S. 36.

 Also, see status report. Attached pp.

**Did you raise GROUND FOUR in the California Supreme Court?**

  ☒ Yes ☐ No.

If yes, answer the following:

  (1)    Nature of proceeding (i.e., petition for review, habeas petition): Habeas Petition.

  (2)    Case number or citation: S157283; Petitioner raised issue.

  (3)    Result (attach a copy of the court's opinion or order if available): DENIED 4/09/08.

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
    ☐ Yes ☒ No

24. If your answer to #23 is "Yes," give the following information:
    (a) Name of Court: _____N/A_____
    (b) Case Number: _____N/A_____
    (c) Date action filed: ___N/A_____
    (d) Nature of proceeding: N/A _____
    _____
    (e) Name(s) of judges (if known): N/A _____
    (f) Grounds raised: ___N/A_____
    _____
    _____
    _____
    _____
    _____

    (g) Did you receive an evidentiary hearing on your petition, application or motion?
        ☐ Yes ☒ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
    (a) At preliminary hearing: Ms. Sloan Ostbye, Public Defender
        400 So. Meiroge Dr., Suite 200  Vista,  CA  92081-6632.
    (b) At arraignment and plea: Ms. Sloan Ostbye
    _____
    (c) At trial: Ms. Sloan Ostbye.
    _____
    (d) At sentencing: Ms. Sloan Ostbye.
    _____
    (e) On appeal: Mr. Greg M. Kane  P.M.B. 86, 993-C South Santa Fe Ave.,
    (f) In any post-conviction proceeding: Mr. Greg M. Kane          Vista, CA 92083.
    _____
    (g) On appeal from any adverse ruling in a post-conviction proceeding: _____
        Mr. Greg M. Kane

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☐ Yes  ☒No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes  ☒No

   (a) If so, give name and location of court that imposed sentence to be served in the future:
     N/A _____

   (b) Give date and length of the future sentence: ___N/A_____

     _____

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
    ☒Yes  ☐ No

28. Consent to Magistrate Judge Jurisdiction

In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to proceed before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter. If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of final judgment, by indicating your consent below.

Choose only one of the following:

☐ Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

 Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

**29.** Date you are mailing (or handing to a correctional officer) this Petition to this court: _____

_____

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____
EUGENE  ORANGE
SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

___4 - 24 — 2008___          _____
(DATE)                                EUGENE  ORANGE
                                      SIGNATURE OF PETITIONER

S157283

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

In re EUGENE ORANGE on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

APR – 9 2008

Frederick K. Ohlrich Clerk

_____
Deputy

_____
GEORGE
Chief Justice

GROUND

I.

THE USE OF EVIDENCE OF PETITIONER'S PRIOR ACTS OF
DOMESTIC VIOLENCE UNDER EVIDENCE CODE SECTIONS
1101, 1109, AND 1250 TO PROVE HIS PROPENSITY
TO COMMIT THE CHARGED MURDER VIOLATED HIS
FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS,
A FAIR TRIAL AND EQUAL PROTECTION OF THE LAW
UNDER THE FIFTH AND FOURTEENTH AMENDMENTS
AND SIMILAR STATE CONSTITUTIONAL RIGHTS

Pursuant to Evidence Code section 1101, 1109, 1250, the
trial court admitted a large quantity of evidence of
petitioner's prior acts of domestic violence, creating so
much prejudice as to tender his trial fundamentally unfair,
violating his federal constitutional rights to due process
and equal protection and similar state constitutional rights.

The state constitutional claim that section 1108 violates
a defendant's right to due process was rejected. Court of
Appeal decisions have held that Falsetta applies equally
to insulate section 1109 from due process challenge.

Falsetta and the other Courts of Appeal decisions
notwithstanding, admitting evidence of petitioner's prior
acts of domestic violence as evidence of his propensity to
commit the charged murder, was federal constitutional error
requiring reversal regardless of the section relied on for
its admission.

Due process. Evidence Code section 1101, subdivision (a)
generally excludes evidence of character or a trait of
character to prove a person's conduct on a specified occasion
-- such evidence is inadmissible under that section to prove
the accused had the propensity or disposition to commit the

charged crime. Limited exceptions to this rule of inadmissibility are provided by Evidence Code section 1101, subdivision (b) and although states may regulate the procedure governing its criminal laws, a state rule violates due process if it offends a principle of justice so rooted in our traditions and conscience as to be deemed fundamental.

Evidence Code section 1101, 1109 and 1250 together, as used here, violated petitioner's state and federal constitutional rights to due process under the Fifth Amendment and Fourteenth Amendments of the United States constitution and state constitutional counterparts by allowing the admission of other acts evidence to show his propensity to commit the currently-charged offenses. Admitting propensity evidence violates a fundamental principle of American jurisprudence and common law followed in the United States for over three centuries that people be convicted for what they have done and not who they are. (McKinney v. Rees (9th Cir. 1993) 993 F.2d 1378, 1384; Henry v. Estelle (9th Cir. 1993) 993 F.2d 1423, 1427-1428, overruled on o.g. in Duncan v. Henry (1995) 513 U.S. 364 [115 S.Ct. 887, 130 L.Ed.2d 865]; Panzavecchia v. Winwright (5th Cir. 1981) 658 F.2d 337, 341; United States v. Burkhart (10th Cir. 1972) 458 F.2d 201, 205.)

The United States Supreme Court decisions have long stated but never squarely held admission of propensity evidence to prove guilt of the current offense violates due process (Estelle v. McGuire (1991) 502 U.S. 62, 75, fn. 5 [112 S.Ct.

475, 116 L.Ed.2d 385] ["Because we need not reach the issue, we express no opinion on whether a state law would violate Due Process if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."]; Brinegar v. United States (1949) 338 U.S. 160, 174 [69 S.Ct. 1302, 93 L.Ed. 1879] [suggesting rule against propensity evidence is essential component of due process]; Boyd v. United States (1892) 142 U.S. 450 [12 S.Ct. 292, 35 L.Ed. 107] [prior crimes evidence so prejudiced trial as to require reversal].)

Nor was the evidence admissible under Evidence Code section 1101, subdivision (b). The admission of other crimes evidence cannot be justified merely by asserting an admissible purpose. The question is whether the evidence of other offenses offered is logically relevant to prove something other than disposition in the case. (People v. Thompson (1980) 27 Cal.3d 303, 319 & fn. 22.) Here it stretches credulity to claim that the other acts evidence admitted here bore on any fact such as motive, opportunity, intent, preparation, plan, knowledge identity, or absence of mistake or accident. If there are subjects for which Evidence Code section 1101, subdivision (b) rendered the other acts evidence admissible here, the connection of those other acts to the subjects is so tenuous that Evidence Code section 352 ought to have rendered that evidence inadmissible anyway.

Moreover, the prior acts admitted did not require the same intent as the currently-charged murder and yet they were used to demonstrate a propensity to commit a much more serious

-14-

offense requiring a more aggravated specific intent. The prior acts of domestic violence which were supposed to demonstrate petitioner's propensity to kill did not share the same mental state or specific intent required for murder, nor did they resemble anything like the commission of murder. They therefore provide no basis for a logical inference that he must have committed the murder because he committed the prior acts. The court nevertheless instructed with CALJIC No. 2.50.02, permitting the jury to use the prior domestic violence to infer petitioner "did commit" murder. (CT 116-117.)

The admission of the prior acts and propensity evidence to prove petitioner's disposition to commit the murder therefore violated his state and federal constitutional rights to due process.

**Equal protection.** Admission of the evidence under Evidence Code sections 1101, 1109 and 1250, even with the so-called safety-valve of Evidence Code section 352, also violated petitioner's right to equal protection of the laws, guaranteed by both state and federal constitutions, because the section treats those accused of acts of domestic violence differently from those accused of all other crimes. (U.S. Const., Fourteenth Amendment; Serrano v. Priest (1971) 5 Cal.3d 584, 596, fn. 11.)

Persons similarly situated must receive like treatment under the law. The legislature may make reasonable classifications and pass special legislation applying to

those classes, but the classification must not be arbitrary and must be based upon a difference in the classes having a substantial rational relation to a legitimate object to be accomplished. (Estelle v. Dorough (1975) 420 U.S. 534, 537-538 [95 S.Ct. 1173, 43 L.Ed.2d 377] [rational basis test]; McLaughlin v. Florida (1964) 379 U.S. 184, 190 [85 S.Ct. 283, 13 L.Ed.2d 222]; Brown v. Merlo (1973) 8 Cal.3d 855, 861.)

Whenever a state law infringes upon a fundamental, constitutionally protected right, that law is subject to strict scrutiny under the Equal Protection Clause. When that standard is applied the state must show a compelling justification for the discrimination or the discrimination is deemed an equal protection violation. (Attorney General of New York v. Soto-Lopez (1986) 476 U.S. 898, 904, 906 [106 S.Ct. 2317, 90 L.Ed.2d 899].) The state must be shown to have adopted a classification affecting two or more similarly situated groups in an unequal manner, and that there is no legitimate purpose served by the classification. (See In re Eric J. (1979) 25 Cal.3d 522, 530.)

Because petitioner's fundamental right to personal liberty is at stake, the strict scrutiny standard is applied and the state must establish both that it has a compelling interest which justifies the challenged procedure and that the distinctions drawn by the procedure are necessary to further that interest. (See Eisenstadt v. Baird (1972) 405 U.S. 438, 447 [192 S.Ct. 1029, 31 L.Ed.2d 349]; People v.

Olivas (1976) 17 Cal.3d 236, 251.) The state, however, can make no such showing.

Evidence Code section 1101, subdivision (b), and 1250, insofar as they provide another ground for admission of Evidence Code section 1109 evidence, single out from all other criminal defendants a class of those who have committed prior acts of domestic violence for different, harsher treatment by permitting use against them of propensity evidence, evidence which has not been admitted against any other class of criminal defendants in over 300 years. The class of those who have committed acts of domestic violence is arbitrary and violates petitioner's right to be treated as all other criminal defendants, including even those accused of first-degree murder, are treated.

There is no compelling justification for treating those accused of domestic violence differently from those accused of murder, violent assault, or burglary. A law which infringe the right to a fair trial and due process simply because he has committed acts of domestic violence in the past and is accused of a current violent offense against his spouse is based on an unlawful distinction which violates the state and federal equal protection guarantees. As reprehensible as the prior acts of domestic violence may be, they are no more reprehensible than killing a child, or a series of children, and child killers are still afforded protection from admission of evidence of their prior uncharged misconduct to show propensity.

-17-

The classification upon which the statute is based therefore violates petitioner's right to equal protection of the laws, including the law of evidence, and the judgment ought to have been reversed.

**Due process.** Section 350 provides that only relevant evidence is admissible. Relevant evidence is defined in section 210 as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." The court has broad discretion in determining the relevance of evidence, but lacks discretion to admit irrelevant evidence. (People v. Scheid (1997) 16 Cal.4th 1, 13-14; People v. Babbitt (1988) 45 Cal.3d 660, 681.)

Section 1101, subdivision (a) generally excludes evidence of character or a trait of character to prove a person's conduct on a specific occasion -- such evidence is inadmissible under that section to prove the accused had the propensity or disposition to commit the charged crime. Limited exceptions to this rule of inadmissibility are provided by subdivision (b) of that section and sections 1102, 1103, 1108, and 1109. On appeal, trial court rulings admitting evidence under section 352, 1101, 1103, 1108, and 1109 are reviewed for abuse of discretion. (See People v. Lewis (2001) 25 Cal.4th 610, 637 [§§ 1101, 352]; People v. Kipp (1998) 18 Cal.4th 349, 369 [§ 1101]; People v. Falsetta (1999) 18 Cal.4th 903, 907, 916-917 [§§ 1108], 352]; People v. Fitch (1997) 55 Cal.App.4th 172, 183 [§§ 1108, 352]; People

v. Escobar (2000) 82 Cal.App.4th 1085, 1095 [§§ 1109, 352]; People v. Jennings (2000) 81 Cal.App.4th 1301, 1314 [§§ 1109, 352].)

Although the Court may have been bound by People v. Falsetta (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455), Falsetta and the other Court of Appeal decisions notwithstanding, the court's ruling allowing in the evidence the prior acts of domestic violence, regardless of the sections relied on, as evidence of his propensity to commit the charged murder, was federal constitutional error which requires reversal of the judgment.

And, although states may regulate the procedure governing its criminal laws, a state rule violates due process if it offends a principle of justice so rooted in the traditions and conscience of our people as to be deemed fundamental. (See Medina v. California (1992) 505 U.S. 437, 445 [112 S.Ct. 2572, 120 L.Ed.2d 353]; Patterson v. New York (1977) 324 U.S. 197, 201-202 [97 S.Ct. 2319, 53 L.Ed.2d 281]; Speiser v. Randall (1958) 357 U.S. 513, 523 [78 S.Ct. 1332, 2 L.Ed.2d 1460].)

Sections 1101, 1109 and 1250 together, as they were used here, violate a defendant's state and federal constitutional rights to due process under the Fifth Amendment and Fourteenth Amendments of the United States constitution by allowing the admission of other acts evidence to show a defendant's criminal propensity to commit the currently-charged offenses. Admitting propensity evidence violates a fundamental principle

of American jurisprudence and common law followed in the United States for over three centuries that people be convicted for what they have done and not who they are. (Garceau v. Woodford (9th Cir. 2001) 275 F.3d 769, 776-777; McKinney v. Rees (9th Cir. 1993) 993 F.2d 1378, 1384; Henry v. Estelle (9th Cir. 1993) 993 F.2d 1423, 1427-1428, overruled on o.g. in Duncan v. Henry (1995) 513 U.S. 364 [115 S.Ct. 887, 130 L.Ed.2d 865]; Panzavecchia v. Wainwright (5th Cir. 1981) 658 F.2d 337, 341; United States v. Burkhart (10th Cir. 1972) 458 F.2d 201, 205.)

The United States decisions have long stated but never squarely held that admission of propensity evidence to prove guilt of the current offense violates due process (Estelle v. McGuire (1991) 502 U.S. 62, 75, fn. 5 [112 S.Ct. 475, 116 L.Ed.2d 385] ["Because we need not reach the issue, we express no opinion on whether a state law would violate Due Process if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."]; Brinegar v. United States (1949) 338 U.S. 160, 174 [69 S.Ct. 1302, 93 L.Ed. 1879] [suggesting that rule against propensity evidence is essential component of due process]; Smith v. Pliler (9th Cir. 2003) 278 F.Supp.2d 1060, 1075; Chaidez v. Knowles (9th Cir. 2003) 258 F.Supp.2d 1069, 1091; Body v. United States (1892) 142 U.S. 450 [12 S.Ct. 292, 35 L.Ed. 107] [admission of prior crimes evidence so prejudiced trial as to require reversal].)

Nor was the evidence admissible under Evidence Code section

1101, subdivision (b). The admission of other crimes evidence cannot be justified merely by asserting an admissible purpose. Rather, its relevancy must be determined. The question is whether the evidence of other offenses offered is logically relevant to prove something other than disposition in the case. (People v. Thompson (1980) 27 Cal.3d 303, 319 & fn. 22.) Here it stretches credulity to claim that other acts evidence admitted here bore on any fact such as motive, opportunity, intent, preparation, plan, knowledge identity, or absence of mistake or accident. (§ 1101, subd. (b).) If there are subjects for which section 1101, subdivision (b) rendered the other acts evidence admissible here, the connection of those other acts to the subjects is so tenuous that section 352 ought to have rendered that evidence inadmissible anyway.

Moreover, the prior acts admitted did not require the same intent as the currently-charged murder and yet they were used to demonstrate a propensity to commit a much more serious offense requiring a more aggravated specific intent. The prior acts of domestic violence which were supposed to demonstrate a propensity on Orange's part to kill did not share the same mental state or specific intent required for murder, and they did not resemble anything like the commission of murder. They therefore do not provide the basis for a logical inference that Orange must have committed the murder because he committed the prior acts. The court nevertheless instructed with CALJIC No. 2.50.02 that the jury could use

the prior domestic violence to infer Orange "did commit" murder. (CT 116-117.)

The trial court erred in admitting any of the prior acts and propensity evidence under sections 1101, subdivision (b), 1109, 1250, or any other section, to prove Orange's disposition to commit the murder, in violation of his state and federal constitutional rights to due process.

**Equal protection.** Admission of the evidence under sections 1101, 1109 and 1250, even with the so-called safety-valve of section 352, also violated Orange's right to equal protection of the laws, guaranteed by both state and federal constitutions, because the section treats those accused of acts of domestic violence differently from those accused of all other crimes. (U.S. Const., Fourteenth Amendment; Cal. Const., art. I, §§ 7, 24; Serrano v. Priest (1971) 5 Cal.3d. 584, 596, fn. 11.)

Persons similarly situated must receive like treatment under the law. (In re Gary W. (1971) 5 Cal.3d 296, 303-304; In re Moye (1978) 22 Cal.3d 457, 466.) The legislature may make reasonable classifications and pass special legislation applying to those classes, but the classification must not be arbitrary and must be based upon a difference in the classes having a substantial rational relation to a legitimate object to be accomplished. (Estelle v. Dorough (1975) 420 U.S. 534, 537-538 [95 S.Ct. 1173, 43 L.Ed.2d 377] [rational basis test]; McLaughlin v. Florida (1964) 379 U.S. 184, 190 [85 S.Ct. 283, 13 L.Ed.2d 222] [classification must always

-22-

rest upon difference bearing reasonable and just relation to an act regarding which classification is proposed, and can never be made arbitrarily, without any such basis]; Brown v. Merlo (1973) 8 Cal.3d 855, 861.)

Whenever a state law infringes upon a fundamental, constitutionally protected right, that law is subject to strict scrutiny under the Equal Protection Clause. When that standard is applied the state must show a compelling justification for the discrimination or that discrimination is deemed an equal protection violation. (Attorney General of new York v. Soto-Lopez (1986) 476 U.S. 898, 904, 906 [106 S.Ct. 2317, 90 L.Ed.2d 899].) The state must be shown to have adopted a classification affecting two or more similarly situated groups in an unequal manner, and that there is no legitimate purpose served by the classification. (See In re Eric J. (1979) 25 Cal.3d 522, 530.)

Because Orange's fundamental personal liberty is at stake, the strict scrutiny standard is applied, and the state must establish both that it has a compelling interest which justifies the challenged procedure, and that the distinction drawn by the procedure are necessary to further that interest. (See, e.g., Eisenstadt v. Baird (1972) 405 U.S. 438, 447 [92 S.Ct. 1029, 31 L.Ed.2d 349]; People v. Olivas (1976) 17 Cal.3d 236, 251.) The state, however, can make no such showing.

Section 1109, and sections 1101, subdivision (b) and 1250, insofar as they provide another ground for admission of

-23-

section 1109 evidence, all single out from all other criminal defendants a class of those who have committed prior acts of domestic violence for different, harsher treatment by permitting admission against them of propensity evidence, which has not been admitted against any other class of criminal defendants in over 300 years. The class of those who have committed acts of domestic violence is arbitrary and violates Orange's right to be treated as all other criminal defendants, including even those accused of first-degree murder, are treated.

On the state of the evidence as now exists there is no completing justification for treating those accused of domestic violence differently from those accused of murder, violent assault, or burglary. A law which impinges the right of a person to a fair trial and due process simply because he has committed acts of domestic violence in the past and is accesed of a violent offense against his spouse is based on an unlawful distinction which violates the state and federal equal protection guarantees.

As reprehensible as the prior acts of domestic violence may be, they are no more reprehensible than killing a child, or a series of children, and child killers are still afforded protection from admission of evidence of their prior uncharged misconduct to show propensity. The classification upon which the statute is based therefore violates Orange's right to equal protection of the law, including the law of evidence, and the judgment ought to be reversed.

GROUND

II.

THE TRIAL COURT ERRED WHEN IT DENIED PETITIONER'S
MOTION TO SUPPRESS EVIDENCE OBTAINED IN THE
WARRANTLESS SEARCH OF HIS APARTMENT, IN VIOLATION
OF HIS FEDERAL CONSTITUTIONAL RIGHTS UNDER THE
FOURTH AMENDMENT, BECAUSE THE WARRANTLESS
ENTRY AND SEARCH WERE NOT JUSTIFIED BY ANY
CIRCUMSTANCES PROVIDING AN EXCEPTION TO THE
RULE OF INADMISSIBILITY

The Court of Appeal denied petitioner a full and
fair hearing on his Fourth Amendment claim...

On May 4, 2006, the Court of Appeal denied petitioner's petition for rehearing, contending the warrantless entry and search were not justified by any valid claim of exigent circumstances (CT 18-21), and that any evidence seized by virtue of the warrant, including Zeda's body, was tainted as the fruit of the initial unlawful search and seizure (CT 15). The prosecution stipulated the police had no warrant to search petitioner's home, and also did not claim they had probable cause to search it. Rather, it argued that the warrantless entry and search were justified by exigent circumstances.

Although the trial court found exigent circumstances existed, the Court of Appeal declined to address the merits of petitioner's contention there were no such exigent circumstances (Supp. AOB 1-16), and instead concluded under the evidence was admissible under inevitable discovery doctrine because petitioner's tenancy ran out shortly after police entered his apartment and management would no doubt have entered his apartment to prepare it for new renters and discovered the body. (Opinion, p. 25.)

The Court of Appeal therefore failed to address the grounds for suppression which were actually litigated by the parties in the trial court and instead resolved the Fourth Amendment issue based on its own inferences of fact drawn on theories never litigated. The result is that petitioner was deprived of the full and fair hearing of his Fourth Amendment claim, including the opportunity to defend against the unlitigated

-26-

inevitable discovery doctrine raised for the first time on appeal. (See Stone v. Powell, supra, 428 U.S. at pp. 494-495.)

The Court of Appeal erroneously raised the inevitable discovery doctrine, drew inferences which were not supported by any evidence presented in the trial court, and improperly resolved the issue against petitioner without providing him an opportunity to defend against its newly-raised ground for denying his Fourth Amendment claim.

The Court of Appeal decision is based, for example, on the unsupported assumption that management would have taken possession of petitioner's apartment on August 1, the day after police illegally entered it. It was clear from the only evidence presented, however, that petitioner had not completed moving, and he still had a right to possession of the premises, even though his tenancy may have expired on July 31.

The statutes defining forcible entry (Code Civ. Proc., § 1159) and forcible detainer (Code Civ. Pro., § 1160) reflect a policy, with deep roots in English law, barring the use of forceful self-help to enforce a right to possession of real property and requiring instead the use of judicial process to gain possession. (Daluiso v. Bone (1969) 71 Cal.2d 484, 490, 495; Jordan v. Talbot (1961) 55 Cal.2d 597, 605 ["Regardless of who has the right to possession, orderly procedure and preservation of the peace require that the actual possession shall not be disturbed

-27-

except by legal process."].)

Real property tenants are not trespassers even if they are unlawfully detaining the premises. They are entitled to peaceful possession until proper legal process, by settlement or judgment, awards possession to the landlord -- and even then actual dispossession of the tenants must be effected by statutorily authorized eviction procedures. (See Glass v. Najafi (2000) 78 Cal.App.4th 45, 48-49 [writ of possession improperly issued absent judgment for possession]; Bedi v. McMullan (1984) 160 Cal.App.3d 272, 276-277:

> A valid writ of execution is the ultimate indispensable element of the legal process by which a party entitled to possession of the property acquires possession. Allowing the landlord to forcibly evict a tenant on the strength of a judgment alone would remove the key conditions on the use of force; necessity and judicial authorization. The procedure for executing a writ for possession is designed to avoid a forcible eviction whenever possible. Accordingly, the occupants of the property must be given five days from the date of service of the writ to voluntarily vacate the property. Only if the occupants do not vacate the premises in five days is the levying officer authorized to remove them by force, if necessary, and place the landlord in possession. (Code Civ. Pro., §§ 715.010, subd. (b)(2), 715.020, subd. (c), 1174, subd. (d).)]

It was therefore far from a fait accompli and is pure speculation that management could and would have entered the apartment at the expiration of petitioner's tenancy, because he had the right to continue in possession

-28-

undisturbed until the procedures for evicting him lawfully were complete -- even if his tenancy was wrongful.

It cannot be said on the basis of anything litigated or otherwise presented in the hearing on the suppression motion trial court that the discovery of petitioner's wife's body was inevitable.

Likewise, the Court's conclusion that petitioner abandoned the premises or had no legitimate expectation of privacy or right to possession, are either unsupported by any evidence or merely assume petitioner had no further right to possession of the apartment once his tenancy expired midnight, July 31. The law clearly holds the landlord has no right to enter until he is in complete compliance with all the formalities of the unlawful detainer law, a process which could take months to complete. The Court relied in United States v. Salvucci (1980) 448 U.S. 83, 92-93, for the proposition a defendant has no constitutional right implicated by the warrantless search once he has no possessory interest in the place searched. This conclusion, however, is contrary to abundant law which recognized the holdover tenant has possessory rights until the unlawful detainer process is completed.

The United States Supreme Court has held Fourth Amendment claims based on the exclusionary rule can be raised by way of federal habeas corpus where there has been no opportunity for a full and fair hearing on the search and seizure issue in the state courts. (Stone v. Powell, supa, 428 U.S. at

pp. 494-495; see Ponce v. Cupp (9th Cir. 1984) 735 F.2d 333, 337.) Here petitioner was not provided a full and fair hearing on his Fourth Amendment claim, which would necessarily require providing him the opportunity to litigate the previously-un-litigated question of inevitable discovery raised for the first time by the Court of Appeal.

### The evidence discovered and seized in the unlawful warrantless search ought to have been suppressed.

Petitioner moved under Penal Code section 1538.5 to suppress the evidence, including the body of Zeda, discovered in a warrantless search of his apartment on July 31, 2003. (CT 12-32.) The prosecution stipulated that the police had no warrant to search petitioner's home. (2RT 77.) The prosecution also did not claim that the police had probable cause to search petitioner's apartment. Rather, it argued that the warrantless entry and search were justified by exigent circumstances. (3RT 109-112)

Sgt. Robert Healey of the Excondido Police Department testified that around noon on July 31, 2003, he was told Zeda was missing. (3RT 77-79.) He was told that she and her children had recently moved out of the apartment where they had lived with petitioner and when he found out where they had moved, she obtained a restraining order against him. Another officer from the department served it on him and that officer had felt the need to call backup. (3RT 79-81, 97.)

Zeda had first been reported missing the evening of July 30, 2003. The same evening a patrol officer had gone to

the apartment and had found no one there. The morning of July 31, 2003, he learned from Zeda's family she had last been seen about midnight, July 29, when she left the apartment. (3RT 81-86, 97.)

Zeda' Sentra was missing too, and a photo surveillance tape from an ATM at Zeda's bank showed petitioner the morning of July 30 driving her car and withdrawing money from her account using her ATM card. (3RT 87-89.)

On July 31, Healey went to petitioner's apartment complex with five other officers in civilian clothes at about 12:00 to 12:30 p.m. to conduct a surveillance. They found no trace of Zeda's Nissan, but did see petitioner's van. He had been seen removing belongings on July 29, or 30, but there was no activity on July 31. The apartment doors were locked, the blinds drawn and a static-like noise came from within. A call to the apartment was answered by an answering machine. (RT 89-93, 97-99.) There were no blood stains or other signs of struggle outside the apartment. (3RT 99, 100.)

After about an hour, around 1:30 p.m., Healey decided to enter the apartment because Zeda could be inside and perhaps injured or otherwise in danger. He called uniformed officers, because petitioner could be inside, and they were better equipped to deal with violence. It took about an hour for the uniformed officers to get there. A police helicopter was also summoned. (3TR 93-96, 98-101.)

No warrant was sought because the process usually took three to five hours and it would be outside normal court

hours by the time the necessary paperwork was prepared, which would delay entry even further. Entry was effected around 2:30 p.m. (RT 95-96, 100.)

Around 2:30 p.m. Detective Luis Rudisell and his partner went to the door of the apartment, and, after announcing their presence and receiving no response, they opened the door with a pass key. The found Zeda in a back bedroom. (RT 102108.)

The court denied the suppression motion, finding exigent circumstances existed, sufficient cause to believe that the victim may have been at risk or in danger. (RT 112-113.)

In so ruling, the court erred, because there were no exigent circumstances justifying the warrantless entry and search of the apartment, which violated his Fourth Amendment rights not to be subjected to unreasonable search and seizure. Because all the evidence discovered in his apartment was the product of an unlawful search, it must be suppressed as fruit of the poisonous tree. (Wong Sun v. United States (1963) 371 U.S. 471, 488 [83 S.Ct. 407 9 L.Ed.2d 441]; Mapp v. Ohio (1961) 367 U.S. 643, 655 [81 S.Ct. 1684, 6 L.Ed2d 1081].

The Fourth Amendment provides that the people are entitled "to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures," one of the fundamental rights protected against state action by the Due Process Clause of the Fourteenth Amendment. (Mapp v. Ohio, supra, 367 U.S. at p. 655; In re Lance W. (1985) 37

Cal.3d 873, 886, 888, 896.) Under the Fourth Amendment, a warrantless entry by the police into a residence is therefore at least presumptively unreasonable and therefore unlawful. (Welsh v. Wisconsin (1984) 466 U.S. 740, 748-749 [104 S.Ct. 2091, 80 L.Ed.2d 732]; Payton v. New York (1980) 4445 U.S. 573, 583-590 [100 S.Ct. 1371, 63 L.Ed.2d 639].) Absent exigent circumstances, probable cause alone is not sufficient to justify a warrantless entry. (Payton v. New York, supra, 445 U.S. at p. 590 ["In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."].)

Exigent circumstances are emergency situations requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. The exceptions to the warrant requirement under the rubric of exigent circumstances are "few in number and carefully delineated." (People v. Williams (1988) 45 Cal.3d 1268, 1298, quoting Welsh v. Wisconsin, supra, 466 U.S. at pp. 749-750.)

Here the claimed exigency was nothing more than a manufactured pretext employed to evade the warrant requirement after the police wasted the time necessary to obtain one. The entry and search of petitioner's home cannot be justified on the basis of the facts presented to the trial court, nor, because of the initial illegality, can

it be salvaged by resort to the doctrine of inevitable. Invasion of the home without a warrant is only permitted when there is probable cause to arrest or to search and exigent circumstances require immediate entry. Here, the police did not have probable cause to believe that Zeda was in petitioner's apartment and therefore did not have any cause to enter it or any reason to believe that an entry would further their investigation. Immediate entry was not required by the circumstances because no one had seen anyone around the apartment for many hours and the police had no information any other people were, or might be, in the apartment. The police theory about a possible victim inside was based on nothing more than imagination, and imagination does not supply the requisite specific, articulable facts showing the need for swift action. (People v. Ray (1999) 21 Cal.4th 464, 472.)

Here there were no such facts and the prosecution failed altogether to meet its burden of showing the deputies did not have time to obtain a search warrant. The non-reasons given by the prosecution were wholly inadequate to justify suddenly and forcibly barging into petitioner's home.

The prosecution argued time was of the essence (2RT 112), but the officers' own actions demonstrated time was, in fact, not of the essence. (People v. Baird (1985) 168 Cal.App.3d 237, 244-245; People v. Stegman (1985) 164 Cal.App.3d 936, 945.) Instead, the timing of the search reflects the total absence of any exigent circumstance or

a finding that police reasonably believed the situation posed an imminent danger requiring immediate action when they decided to enter the premises.

The facts indicate that during the more than 16 hours between the report that Zeda was missing and the entry, no one involved treated it as an emergency requiring urgent action. Police received the report Zeda had been missing since around midnight Tuesday at 10:00 p.m. on Wednesday, July 30 -- 22 hours before she was reported missing -- and an officer had knocked on the apartment door. The following morning the case was assigned for investigation and no one was able to locate her that morning. Her Sentra was located at her new apartment, and not at petitioner's apartment. Around noon, Thursday, police obtained a photo of petitioner driving the Sentra while he made ATM withdrawals Wednesday morning. (3RT 82-89, 97.)

About 12:00 or 12:30 Thursday, four undercover officers went to the apartment to try to locate Zeda. They interviewed petitioner's neighbors, none of who had seen petitioner or Zeda that day or the day before, and the apartment had been quiet all day Thursday. They were not able to see inside, but heard what they thought was static from a television, and, when they called petitioner's apartment telephone number reached only an answering machine. (3RT 89, 91-93, 98-99.) They saw no blood or anything else indicating a disturbance outside the apartment. (RE 99-100, 108).

At about 1:30 p.m., fifteen and a half hours after Zeda was first reported missing, and 37-and-a-half hours after she went missing midnight Tuesday, police decided to enter without a warrant because they thought it necessary to check on her welfare. After the additional officers arrived and were briefed, they entered, at about 2:30 p.m. -- sixteen-and-a-half hours after Zeda was reported missing and over 38 hours after she first went missing. Police also waited an undetermined additional amount of time for the sheriff's helicopter to arrive. A warrant was not sought because the officer in charge knew it was a three to five hour process to obtain one, and they needed to check right then, without the delay required to process a warrant. (RT 93-96, 98-101, 103.)

In People v. Ramey (1976) 16 Cal.3d 263, 276-277, a search was invalidated based on a delay of three hours between the time the information was given to police and the arrest in defendant's home, during which period no effort whatsoever was made to obtain a warrant. The delay there took place in the middle of a weekday afternoon, while magistrates were readily available for issuance of warrants. The Ramey court cited with approval Commonwealth v. Forde (1975) 367 Mass. 798, 807, which found police delay of three hours in seeking warrants which occurred at night unjustifiable, and rejected the prosecution claim of emergency.

Here the only exigency was created by the officers' extraordinary delay -- Zeda was reported missing the evening

of July 30, 22 hours after she disappeared, but officers waited until the morning of July 31 to speak to the family. Then, the afternoon of the 31st, when they went to petitioner's apartment, they found he was last seen on July 29 or 30, but there had been no activity on the 31st. Nothing about the apartment seemed suspicious, other than that no one was home. After waiting another hour, at about 1:30, the officer decided to enter because he believed it was possible Zeda was inside and in danger. No warrant was sought because it normally takes three to five hours.

The facts that the police arrived at noon and waited until about 2:30 to enter the apartment themselves render the claim of exigency requiring rapid, warrantless entry spurious. Police consumed an extraordinary amount of time prior to deciding to enter without a warrant, and then they waited an additional hour or more to get a properly-equipped team together, and then they waited longer for the sheriff's helicopter to show up, a great amount of time which could and should have been used to seek a warrant.

Zeda, moreover, had been reported missing at 10:00 p.m. on Wednesday, after she had been missing since the previous midnight, 22 hours before the report was made, and the police waited at least another 16-and-a-half hours from the time the report clearly raised the possibility of her injury, to enter the apartment. What "immediate action" could they take, what emergency could they alleviate, by entering the apartment over 16 hours after learning the facts claimed

-37-

to warrant entry, at a time which was itself 22 hours after she disappeared?

The officers' belief was clearly not objectively reasonable, particularly where the officer who decided to enter had waited over 16 hours to enter. The supposed need to enter existed from the moment the police were notified Zeda was missing, 10:00 p.m. Wednesday night, July 30, and that need was exacerbated by the time passing before the report was made. The need also existed when the police first went to the apartment that night, and it certainly still existed at 12:30 Thursday afternoon, July 31, a weekday when the courts were open and accessible. Yet the police still waited for an hour before deciding to form the team, a process itself taking over an hour, and they still waited for the helicopter, when they were going into an apartment from which there could be no escape.

If the police are permitted, as they were here by the trial court and the Court of Appeal, to make warrantless entry because it takes a few hours to obtain a warrant on a business day during normal court hours, the police will have dispensed with the warrant requirement altogether, because all they need do is claim the existence of exigent circumstances. The complete police disregard of the warrant requirement and for petitioner's right to be free from unreasonable state intrusion into his home constituted a clear violation of the state and federal constitutions, and both the trial court's ruling that this was a permissible

**Evidence Code section 352 is no safeguard.** The trial court also erred ruling the evidence was admissible despite the Evidence Code section 352 balancing test which is supposed to prevent due process violations caused by use of propensity evidence. (People v. Fitch, supra, 55 Cal.App.4th at p. 183.) According to People v. Falsetta, supra, 21 Cal.4th at pp. 917-918, the trial court's discretion to exclude propensity evidence under Evidence Code section 352 "saves section 1108 from defendant's due process challenge" because "section 352 affords defendants a realistic safeguard in cases falling under section 1108."

Notwithstanding Fitch and Falsetta and the other decisions following them with respect to section 1109, section 352 fails altogether to provide an effective safeguard against a fundamentally unfair trial. The fundamental flaw in the analysis is that the trial court, not the jury, performs the analysis. It is a redundancy to provide a trial court with discretion to admit or exclude prejudicial propensity evidence when such evidence is by its nature so highly prejudicial that it ought to be excluded automatically, as has been the practice for the past three hundred years.

And, once the court has decided the propensity evidence is admissible it is admitted without any effective limitation on how the trier of fact can use it. For example, the current, revised version of CALJIC No.2.50.02 specifically advises the jury it can use the propensity evidence to convict the defendant of the charged offense, creating the

possibility of conviction on the evidence alone -- the essence of the due process and equal protection constitutional violations.

_____

2.  The jury was instructed (13RT 1059-1060; CT 116-117):

> Evidence has been introduced for the purpose of showing that the defendant engaged in an offense involving domestic violence on one or more occasions other than that charged in the case.

> "Domestic violence" means abuse committed against an adult or a fully emancipated minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with who the defendant has had a child or is having or has had a dating or engagement relationship.

> "Abuse" means intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another.

> If you find that the defendant committed a prior offense involving domestic violence, you may, but are not required to, infer that the defendant had a disposition to commit another offense involving domestic violence. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime of which he is accused.

> However, if you find by a preponderance of the evidence that the defendant committed a prior crime or crimes involving domestic violence, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged offense. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime.

> Unless you are otherwise instructed, you must not consider this evidence for any other purpose.

For admission, the prior acts need not manifest the same or even similar intent as the currently-charged crime, and yet they can be used to convict of a more serious offense requiring a more aggravated specific intent. CALJIC No. 2.50.02 permits the jury to use the prior domestic violence to infer that the defendant "did commit" murder, despite the lack of any demonstration of the same or similar intent in the prior acts which supposedly demonstrate the propensity to kill.

Moreover, Evidence Code section 1109 alters entirely the balancing process under Evidence Code section 352 in several major ways. First, it establishes a presumption in favor of admissibility of the propensity evidence. (People v. Soto (1998) 64 Cal.App.4th 966, 984 [recognizing Evid. Code, § 1108 evidence is presumptively admissible until it fails to Evid. Code, § 352 test].)

Second, it moves the focus of the analysis from the prejudice caused by admission of the evidence and instead substitutes the presumption favoring admissibility. Because the section makes prior acts of domestic violence presumptively admissible to show propensity, the express legislative policy of Evidence Code section 1109 undermines the power of trial courts to exclude evidence of prior acts of domestic violence because of the danger of its use as propensity evidence, the very reason that evidence ought to be excluded automatically.

Evidence Code section 352 is therefore not a realistic safeguard protecting a defendant's due process and equal protection rights at all, because trial courts are more likely

to admit the evidence than not. As noted by one court with respect to prior convictions, "[O]nce prior convictions are introduced, the trial is, for all practical purposes, completed and the guilty outcome follows a mere formality." (United States v. Burkhart (10th Cir. 1972) 458 F.2d 201, 204; United States v. Vargas (7th Cir. 1978) 583 F.2d 380, 387 [because of uniquely harmful aspects of such evidence, its overemphasis can constitute reversible error even when it was admitted for proper purpose].) It is no different with the admission of uncharged prior acts of domestic violence because they could have been charged as crimes but were not.

And in any event, the court abused its discretion under Evidence Code section 352 by failing to rule that the prior acts evidence was so prejudicial and tangential to the current offense that it ought to have been excluded, demonstrating the failure of section 352 to function as the safety valve required to guarantee due process where evidence of prior acts is admitted to show propensity.

Evidence Code section 1109, and its enabling counterpart, section 1101, subdivision (b), and any other section upon which the court may have relied to admit the other acts evidence, together constitute an unfair, unconstitutional statutory scheme, drafted to accomplish precisely what the constitutional guarantees were intended to prevent. The propensity evidence so fatally infected the proceedings as to render them fundamentally unfair. (Jammal v. Van de Kamp (9th Cir. 1991) 926F.2d 918, 919.)

As applied here, the admission of the other acts evidence violated petitioner's federal constitutional rights to due process, a fair trial and equal protection of the law, under the Fifth and Fourteenth Amendments. The judgment ought therefore to have been reversed.

The preponderance of evidence standard employed in the court's instructions on other acts of domestic violence admitted pursuant to Evidence Code sections 1101, subdivision (b), and 1109 violated petitioner's federal constitutional rights to due process and to a jury trial by proof beyond a reasonable doubt, under the Fifth, Sixth, and Fourteenth Amendments and similar state constitutional rights. Pursuant to Evidence Code sections 1101, subdivision (b) and 1109, the court permitted the prosecution to use great quantities of evidence of petitioner's prior acts of domestic violence to show his propensity to commit murder. The jury was permitted to use the evidence of petitioner's disposition to conclude that he committed the currently charged murder. Even with the additional cautionary language, the law continues to permit the jury to base its verdicts directly upon an inference from the prior acts evidence. Even though the limitation added to CALJIC No. 2.50.02 states that the prior acts are not sufficient by themselves to prove guilt of the charged offense, taken as a whole, the law nevertheless permits the jury to convict by a preponderance of the evidence rather than by proof beyond a reasonable doubt, and it permits use of the evidence of prior acts of domestic violence to deduce from

them that petitioner had a propensity to commit murder.

The instructions, CALJIC No's. 2.50.02, 2.50.1, and 2.50.2, violated petitioner's fundamental right to be convicted by proof beyond a reasonable doubt, in violation of his federal and state due process rights.[3] (In re Winship (1970) 397 U.S. 358, 364.)

> 3    The state constitutional claim that the law as stated in the 1999 version of CALJIC No. 2.50.01, upon which CALJIC No. 2.50.02 is based, violates a defendant's right to due process was rejected in People v. Reliford (2003) 29 Cal.4th 1007, 1012-1016 [finding instruction not flawed and or misleading to jury for limited purpose for which it could consider evidence or on prosecution burden of proof]. Petitioner submits that the instruction nevertheless violated his federal due process right to a fair trial by permitting use of the challenged propensity evidence to convict him, and by proof by a mere preponderance of the evidence.

Evidence Code section 1109 and the CALJIC instructions on use of the other acts evidence violate the requirement of the Fifth, Sixth and Fourteenth Amendments and similar state provisions requiring the jury find the charged offenses proved beyond a reasonable doubt, and instructing the jury as it did with the challenged instructions constituted reversible error. (Sullivan v. Louisiana (1978) 508 U.S. 275, 278-281 [113 S.Ct. 2078, 124 L.Ed.2d 182] [mis-description of the burden of proof is structural error which vitiates all the jury's findings]; see Gibson v. Ortiz (9th Cir., 2004) 387 F.3d 812, 825-826 [federal habeas corpus relief granted where 1998 versions of CALJIC No's. 2.50.01 and 2.50.1 permitted jury to convict defendant of charged offenses based on preponderance of evidence standard, depriving defendant of due process under Fifth

Amendment and jury verdict required by Sixth Amendment].)

The judgment ought therefore to have been reversed, and because it was not, petitioner request this Court to grant his case review.

entry and the Court of Appeals attempt to justify the entry on unlitigated grounds were based on speculation and insubstantial evidence.

The exclusionary rule is intended to provide a disincentive for police misconduct violating the Fourth Amendment, and it ought to prevail over the fortuitous event that petitioner's tenancy was ending. All of the evidence seized, whether as a result of the warrantless entry or pursuant to the warrant obtained thereafter based on that illegally obtained evidence, ought to have been suppressed as obtained in violation of the federal constitutional right to be free of unreasonable search and seizure under the Fourth Amendment and similar state provisions. The judgment ought to have been reversed and the matter remanded for retrial in which none of the challenged evidence was admitted, and because it was not, and because petitioner was not afforded a full and fair hearing on his Fourth Amendment claim, he requests this Court to grant his case review.

## CONCLUSION

For the reasons stated above and in petitioner's brief's, the judgment ought to have been reversed and the case remanded for retrial in which the challenged evidence was excluded. Because it was not, petitioner respectfully requests this Court grant his petition for review.

claimed error pursuant to the standards set fourth in Chapman v. California, (1967) 386 U.S. 18, 24, under which reversal is required unless the court can say beyond a reasonable doubt that the result would not have been more favorable in the absence of the error. Petitioner concludes that the Court cannot say such beyond a reasonable doubt.

The cumulative effect Orange asserts is that even if no single error requires reversal, the cumlative effect of the errors was prejudicial and requires reversal of the judgment. The Court stated that, "[W]e have identified only one possible error that occured at trial-the admission of Zeda's notes to her friend and sons. However, as we have discussed, even assuming the admission of the notes was error, THE NOTES did not prejudice Orange. The Court concluded that 'Orange received a fundamental fair trial,' which petitioner disagrees with therein. If the notes would have been excluded from the alleged evidence, the likelyhood that Orange would have been found innocent, is very high indeed.

Therefore, the judgment ought to be reversed, and remanded back to the superior court for retrial, with the exclusion of the notes.

Respectfully submitted,

Dated APRIL 17-2007, 2007

Eugene Orange
Petitioner
In pro se

GROUND

III.

THE COURT ERRED IN ADMITTING THE TWO NOTES, WHICH
WERE INADMISSIBLE HERESAY DESPITE EVIDENCE CODE
SECTION 1370, VIOLATING APPELLANT'S RIGHTS TO DUE
PROCESS AND CONFRONTATION UNDER THE FIFTH, SIXTH, AND
FOURTEENTH AMENDMENTS AND CRAWFORD v. WASHINGTON,
AND SIMILAR STATE RIGHTS UNDER ARTICLE I,
SECTIONS 7, 15, 16, AND 24...

GROUND

IV

APPELLATE COUNSEL DID NOT RAISE
THE FACT THAT THE ADMISSION OF THE
TWO NOTES CONSTITUTED FEDERAL
CONSTITUTIONAL ERROR.

In view of the strength of the prosecution's case against Orange, the significance of the two notes is negligible. Orange had a history of becoming angry with Zeda. Zeda had sought restraining orders against Orange due to her concern about what he might do to her. Zeda's body was found in the bed in a locked apartment she had shared with Orange. After Zeda's mother reported her missing, Orange was captrued on video using Zeda's ATM card to withdraw money from her account, and sitting alone in Zeda's car, which she had taken with her to her new apartment. Orange fled his apartment and attempted to conceal his identity by using the social security card belonging to one of Zeda's sons.

Additionally, Galbreath testified--without objection--that Zeda had informed her about a week before the murder that she had taken out insurance policies on her own life and told Galbreath where they were located. Zeda told Galbreath that "she was going to go out fighting," and asked Galbreath to "be strong" when Galbreath indicated that she did not want to hear Zeda "talk[ing] like that." The contents of Zeda's notes were thus merely cumulative to other evidence presented at trial.

Because the alleged error raises federal Confrontation Clause issues, the Court assessed the prejudice resulting from the

Whether the trial court erred in denying Petitioner's motion to suppress the evidence seized in the warrantless entry and search of his apartment. The issue warrants a decision by this Court recognizing the trial court erred in denying the suppression sought by Petitioner.

Also involved in this issue is the failure by the Court of Appeal who failed to address the grounds for suppression which were actually litigated by the parties in the trial court. As discussed below, the Court of Appeal instead resolved the Fourth Amendment issue based on inferences of fact it drew in support of theories which were never litigated. On May 4, 2006, the Court of Appeal denied petitioner's petition for rehearing of his contention that the challenged search and seizure were illegal and the evidence seized ought to be suppressed. The result of the denial of his petition for rehearing is that petitioner was deprived of the full and fair hearing of his Fourth Amendment claim required by the United States Constitution, including the opportunity to defend against the un-litigated inevitable discovery doctrine raised for the first time by the Court of Appeal.

Here, the prosecution offered two notes written by Zeda (12RT 979-981, 983), to which the defense strenuously objected on hearsay and confrontation grounds. (12 RT 1011, 1049, 1129.) The highly inflammatory notes, one to Lisa Galbreath, dated June 3, 2003 (Exhibit 49 [9]), and the other to her sons, also dated June 3, 2003 (Exhibit 50 [10]), were admitted, the

court finding that they were probative and passed section
352 analysis. (CT 293; 12RT 1011; 13R 1049.) It later
reiterated its ruling, saying it was relying on section 1370,
despite Crawford v. Washington (2004) 541 U.S. 36 (124
S.Ct. 1354, 158 L.Ed.2d 177). (13RT 1128-1129.)

---

8 The court granted Orange's motion in limine to
federalize all hearsay, relevance or 352 objections.
(CT 71-76, 269; 4RT 122-123.)

9 Exhihit 49, addressed "For Ms. Lisa Galbreath,"
states:

"I left the boys sleeping while going with Eugene
to get a truck. If they have giving [sic] you this
note it means I did not return, if this is true.
Please act as executor of my estate, and make sure
all of my life insurance policies are put in an
account for my boys until age 18 receive partial
and then the balance at age 21. Thank you I love
you. Zeda Barnett."

10 Exhibit 50 states:

"Good Morning Boys, I love you. I have gone to
get moving truck and will be back if I am not back
by 3:00 p.m. call Ms. Lisa and give her the other
note in bag I left. Ms. Lisa number is 760-839-
5258. Go on and eat when hungry. Love Mom."

11 Section 1370 provides:

(a) Evidence of a statement by a declarant is not made
inadmissible by the hearsay rule if all of the following
conditions are met:

(1) The statement purports to narrate, describe,
or explain the infliction or threat of physical
injury upon the declarant.

(2) The declarant is unavailable as a witness
pursuant to Section 240.

(3) The statement was made at or near the time
of the infliction or threat of physical injury.
Evidence of statements made more than five years
before the filing of the current action or
proceeding shall be inadmissible under this section.

-41-

(4) The statement was made under circumstances that would indicate its trustworthiness.

(5) The statement was made in writing, was electronically recorded, or made to a physician, nurse, paramedic, or to a law enforcement official.

(b) For purposes of paragraph (4) of subdivision (a), circumstances relevant to the issue of trustworthiness include, but are not limited to, the following:

(1) Whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested.

(2) Whether the declarant has a bias or motive for fabricating the statement, and the extent of any bias or motive.

(3) Whether the statement is corroborated by evidence other than statements that are admissible only statements that are admissible only pursuant to this section.

(c) A statement is admissible pursuant to this section only if the proponent of the statement makes known to the adverse party the itention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement.

Section 1370. In general, section 1370, added in 1996, creates a hearsay exception for statements purporting to narrate, describe, or explain the infliction or threat of physical injury on the declarant if its requirements are met. The section has been upheld against confrontation and due process challenges, relying upon Ohio v. Roberts (1980) 448 U.S. 56 [100 S.Ct. 2531, 65 L.Ed.2d 597], pursuant to which only two requirements must be met to comply with the right to

confrontation -- unavailability and trustworthiness. (People v. Hernandez (1999) 71 Cal.App.4th 417, 422, 424 [due process is satisfied by reciprocity and fact that statute is similar to spontaneous statement exception, which is firmly rooted exception to hearsay rule]; see Guardianship of Simpson (1998) 67 Cal.App.4th 914, 937.)

**Crawford v. Washington.** The Crawford decision, however, rejected the Ohio v. Roberts trustworthiness test, thereby rendering Hernandez and Simpson dead letter, and compelling the conclusion that the admission of the hearsay notes was a violation of Orange's Sixth Amendment right to confrontation.

In Crawford, the United States Supreme Court rejected the test of Ohio v. Roberts, supra, 448 U.S. 56, by which an unavailable witness' out-of-court statement could be admitted against a criminal defendant if the statement had adequate "indicia of reliability." (Crawford, 541 U.S. at pp. 60-62.) In overruling Roberts, the Supreme Court held that the admission of testimonial evidence from a witness who does not testify violates the Confrontation Clause, unless the witness is unavailable and the defendant has had prior opportunity for cross-examination. (Id., 541 U.S. at p. 68.) The test of Ohio v. Roberts was disapproved because it left the Confrontation Clause's protections to "the vagaries of the rules of evidence" and "amorphous notions of reliability." (Id., 541 U.S. at p. 61.)

Moreover, hearsay evidence used to convict a defendant

must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial. (Idaho v. Wright (1990) 497 U.S. 805, 822 [110 S.Ct. 3139, 111 L.Ed.2d 638].)

The Court declined to define what evidence is "testimonial," but it presented some formulations of this "core class," including (1) "'exparte in-court testimony or its functional equivalent -- that is, material such s affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially'"; (2) "'extrajudicial statements...contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions'"; (3) "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial'"; and (4) "[s]tatements taken by police officers in the course of interrogations." (Id. at pp. 51-52; italics added.)

Zeda's notes, the first naming Orange as the reason why she did not return if that turned out to be the case, and the second telling her children that she went to get a moving truck and to give Lisa Galbreath the first note if she did not return, are clearly "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." (Id. at p. 52.) The notes should have

-44-

been excluded for the same reasons that her declaration for the restraining order were excluded -- they were hearsay bore no indicia of reliability.

Since Crawford was decided, several Court of Appeal decisions have recognized that section 1370 runs afoul of the Sixth Amendment as interpreted by Crawford, and that convictions resting on evidence admitted pursuant to that section must be reversed.

In People v. Pantoja (2004) 122 Cal.App.4th 1, a murder prosecution, a First District panel held that admission under section 1370 of the victim's declaration in support of an application for restraining order against the defendant filed three days before her killing was error, because her declaration in support of her application for a restraining order fell within the definition of a testimonial statement subject to Crawford. Testimonial statements include "'ex parte in-court testimony or its functional equivalent -- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.'" (Pantoja, supra, 122 Cal.App.4th at pp. 9-10, citing Crawford, supra, 541 U.S. at p. 51.) There, the defendant, like Orange, (1) did not have the opportunity to cross-examine the victim with respect to her writing; (2) it was made in contemplation of litigation -- there the restraining order; here, in contemplation of a dissolution; and (3) it failed the

reliability prong of section 1370. (Id. at p. 14.)

Another panel First District panel held, in People v. Prisce
(2004) 120 Cal.App.4th 224, 239, that, in light of Crawford,
the trustworthiness prong of section 1370 must be interpreted
as requiring prior opportunity to cross-examine the declarant.

In People v. Kons (2003) 108 Cal.App.4th 514, 523-525,
a prosecution for attempted murder and assault with a firearm,
the Third District held that the victim's statement, made
one or two days after the shooting and identifying the
defendant as the shooter was improperly admitted under section
1370 because that exception is not a firmly rooted hearsay
exception for Confrontation Clause purposes, and
particularized guarantees of trustworthiness were lacking.;
The court held section 1370 unconstitutional as applied,
because admission of the challenged statement violated the
right to confrontation "because the statement itself did
not contain the requisite particularized guarantees of
trustworthiness to overcome its presumed unreliability."
(Id. at p. 520; italics added.) And the fact that there was
nothing in the record to establish a bias or motive by the
victim against the defendant was not sufficient to indicate
trustworthiness:

> Because, under Ohio v. Roberts, supra, 448 U.S.
> at page 66, the hearsay statement is inherently
> unreliable (and hence inadmissible), until that
> presumption is rebutted based on the circumstances
> in which the statement was made, we must presume
> the declarant is biased or mistaken until the
> prosecution presents some evidence to the contrary
> to establish the declarant's statement is reliable.
> The absence of evidence is not enough. (Id. at
> p. 524.)

-46-

Here, there is nothing in the notes themselves bearing on the reliability and trustworthiness of the statements they contained, and they fail altogether by themselves to satisfy the reliability requirement, making them inadmissible hearsay admitted in violation of the right to confrontation.

**Prejudice.** The fundamental character of the right of confrontation and cross-examination is beyond question. Any denial or significant diminution of this right calls into question the ultimate integrity of the fact-finding process. (Chambers v. Mississippi (1973) 410 U.S. 284, 295 [93 S.Ct. 1038, 35 L.Ed.2d 297].) The denial of effective cross-examination is "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." (Davis v. Alaska (1974) 415 U.S. 308, 318; Smith v. Illinois (1968) 390 U.S. 129, 131 [19 L.Ed.2d 956, 88 S.Ct. 748].)

As explained by the United States Supreme Court in Delaware v. Van Arsdall (1986) 475 U.S. 673, 680 [106 S.Ct. 1431, 89 L.Ed.2d 674].)

> While some constitutional claims by their nature require a showing of prejudice with respect to the trial as a whole, see, e.g., Strickland v. Washington (1984) 466 U.S. 668 [604 S.Ct. 2052, 80 L.Ed.2d 674] ineffective assistance of counsel), the focus of the Confrontation Clause is on individual witnesses. Accordingly, the focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial. It would be a contradiction in terms to conclude that a defendant denied any opportunity to cross-examine the witnesses against him nonetheless had been afforded his right to "confront[ation]" because use of that right would not have effected the jury's verdict. We think

-47-

that a criminal defendant states a violation of
the Confrontation Clause by showing that he was
prohibited from engaging in otherwise appropriate
cross-examination designed to show a prototypical
form of bias on the part of the witness, and thereby
"to expose to the jury the facts from which jurors
... could appropriately draw inferences relating
to the reliability of the witness." (Citing Davis
v. Alaska, supra, 415 U.S. at p. 318,)

Orange has clearly demonstrated the required prejudice.
A reasonable jury might have received a significantly
different impression of Zeda's reliability, bias, and
credibility had Orange's counsel been able to cross-examine
her on the contents of the notes and the other forms of
prototypical bias which might be expected to arise where
her domestic situation was such that she had obtained two
restraining orders, separated, and contemplated dissolution
of the marriage. There is nothing inherent in the
circumstances of her existence that creates a lack of bias,
or instills reliability or trustworthiness in notes which
otherwise bear no such indicia. Orange was denied his right
to cross-examine Zeda on what amounts to her accusation that
he murdered her. And he was convicted on the untested
testimony of those hearsay notes, when there was no showing
in them that her attribution of her disappearance to him
was trustworthy or reliable. Other than the circumstantial
evidence that he had been abusive to her, there was no
physical evidence that he killed her, and the notes, like
the declarations for the restraining orders, should never
have been admitted.

The judgment ought therefore to be reversed and the matter

remanded for retrial in which the notes are not admitted.

Respectfully submitted,

Dated: _APRiL 7-2007_, 2008

Eugene Orange
Petitioner
In pro se

///
//

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1983, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**FILING FEE PAID**
Yes ☐    No ☐

**IFP MOTION FILED**
Yes ☐    No ☑

**COPIES SENT TO US.**

**Court**

**FILED**
APR 28 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**I (a) PLAINTIFFS**

Eugene Orange

**DEFENDANTS**

Hedgepeth, et al

**(b) COUNTY OF RESIDENCE OF FIRST LISTED** Kern
**PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Eugene Orange
PO Box 5103
Delano, CA 93216
V-64598

**ATTORNEYS (IF KNOWN)**

'08 CV 0767 BTM WMc

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

## 28 U.S.C. 2254

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☑ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☑ 1 Original Proceeding    ☐ 2 Removal from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23    **DEMAND $**    Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**    JUDGE    Docket Number

DATE    4/28/2008    SIGNATURE OF ATTORNEY OF RECORD

R. Muller

CR