EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GARY W. SCHONS
Senior Assistant Attorney General
KEVIN VIENNA
Supervising Deputy Attorney General
DOUGLAS P. DANZIG, State Bar No. 153048
Deputy Attorney General
 110 West A Street, Suite 1100
 San Diego, CA 92101
 P.O. Box 85266
 San Diego, CA 92186-5266
 Telephone: (619) 645-2285
 Fax: (619) 645-2271
 Email: Doug.Danzig@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE ORANGE,<br><br>    Petitioner,<br><br>    v.<br><br>A. HEDGEPETH, Warden, et al.,<br><br>    Respondent. | 08cv0767-BTM (WMc)<br><br>**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>28 U.S.C. § 2254Date: |

1

## TABLE OF CONTENTS

2                                                                                    **Page**

3    MEMORANDUM OF POINTS AND AUTHORITIES                                           4

4    **I.    PROCEDURAL BACKGROUND**                                               4

5    **II.   FACTUAL BACKGROUND**                                                  6

6    **III.  THE AEDPA STANDARD**                                                  12

7    **IV.   GROUND ONE SHOULD BE DENIED BECAUSE THE STATE
         COURT DETERMINATION OF THE MERITS OF THE CLAIM**
8        **WAS CONSISTENT WITH CONTROLLING PRECEDENT AND
         REASONABLE**                                                             13
9
         A.   Background                                                          13
10
         B.   Analysis Of Due Process Claim                                       14
11
         C.   Analysis Of Equal Protection Claim                                  15
12
     **V.    PETITIONER IS NOT ENTITLED TO HABEAS RELIEF ON**
13       **GROUND   TWO,  BECAUSE   THE   STATE   COURT
         DETERMINATION OF THE MERITS OF THE CLAIM WAS**
14       **CONSISTENT   WITH   CONTROLLING   LAW   AND
         REASONABLE**                                                             16
15
     **VI.   PETITIONER IS NOT ENTITLED TO HABEAS RELIEF ON**
16       **GROUND   THREE,  BECAUSE   CONSIDERATION  OF  THE
         CLAIM IS BARRED**                                                        18
17
     **VII.  PETITIONER IS NOT ENTITLED TO HABEAS RELIEF ON**
18       **GROUND FOUR, BECAUSE THE CALIFORNIA SUPREME
         COURT'S   DETERMINATION   OF   THE   MERITS   OF**
19       **PETITIONER'S   CLAIMS   WAS   CONSISTENT   WITH
         CONTROLLING PRECEDENT AND REASONABLE**                                   19
20
         A.   Background                                                          19
21
         B.   Analysis                                                           20
22
     CONCLUSION                                                                   23
23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Carriger v. Lewis*
971 F.2d 329 (9th Cir.1992)                                                              17

*Crawford v. Washington*
541 U.S. 36
124 S. Ct. 1354
158 L. Ed. 2d 177 (2004)                                                            19, 21

*Davis v. Griggs*
443 Fed.3d 1155 (9th Cir. 2006)                                                       15

*Delgado v. Lewis*
223 F.3d 976 (9th Cir. 2000)                                                             20

*Estelle v. Dorrough*
420 U.S. 534 (1975)                                                                      15

*Estelle v. McGuire*
502 U.S. 62
112 S. Ct. 475
116 l. Ed. 2d 385 (1991)                                                            14, 17

*Gordon v. Duran*
895 F.2d 610 (9th Cir. 1990)                                                             18

*Gustave v. U.S.*
627 F.2d 901 (9th Cir. 1980)                                                             21

*Hassinger v. Adams*
243 Fed.Appx. 286 (9th Cir. 2007)                                                      18

*Himes v. Thompson*
336 F.3d 848 (9th Cir. 2003)                                                           20

*In re Winship*
397 U.S. 358
90 S. Ct. 1068
25 L. Ed. 2d 368 (1970)                                                                  17

*Jones v. Barnes*
463 U.S. 745
103 S. Ct. 3308
77 L. Ed. 2d 987 (1983)                                                                  21

*Lambert v. Blodgett*
393 F.3d 943 (9th Cir. 2004)                                                           12

*Larson v. Palmateer*
515 F.3d 1057 (9th Cir. 2008)                                                          14

## TABLE OF AUTHORITIES  (continued)

**Page**

*Lockyer v. Andrade*
538 U.S. 63 (2003) .......................................................... 12

*Marshall v. Longberger*
459 U.S. 422
103 S. Ct. 843
74 L. Ed. 2d 646 (1983) ............................................... 20

*Miller v. Keeney*
882 F.2d 1428 (9th Cir. 1989) .................................... 21

*Ortiz-Sandoval v. Gomez*
81 F.3d 891 (9th Cir. 1996) ........................................ 18

*Penry v. Johnson*
532 U.S. 782
121 S. Ct. 1910
150 L. Ed. 2d 9 (2001) ................................................ 14

*People v. Falsetta*
21 Cal.4th 903 (1999) ................................................. 14

*People v. Johnson*
77 Cal.App.4th 410 (2000) ......................................... 15

*People v. Reliford*
29 Cal.4th 1007 (2003) ............................................... 17

*Siripongs v. Calderon*
35 F.3d 1308 (9th Cir. 1994) ...................................... 18

*Smith v. Robbins*
528 U.S. 259
120 S. Ct. 746
145 L. Ed. 2d 756 (2000) ........................................ 20, 22

*Stone v. Powell*
428 U.S. 465
96 S. Ct. 3037
49 L. Ed. 2d 1067 (1976) ............................................ 18

*Taylor v. Maddox*
366 F.3d 992 (9th Cir.2004) ....................................... 12

*Ulster County Court v. Allen*
442 U.S. 140
99 S. Ct. 2213
60 L. Ed. 2d. 777 (1979) ............................................. 17

*United States v. LeMay*
260 F.3d 1018 (9th Cir. 2001) .................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

08CV0767 BTM (WMc)

## TABLE OF AUTHORITIES  (continued)

|  | Page |
|---|---|
| *Washington v. Davis*<br>426 U.S. 229<br>96 S. Ct. 2040<br>48  L. Ed. 2d 597 (1976) | 15 |
| *Williams v. Taylor*<br>529 U.S. 362 (2000) | 12 |
| *Woodford v. Visciotti*<br>537 U.S.19<br>123 S. Ct. 357<br>154 L. Ed. 2d 279 (2002) | 20 |

**Constitutional Provisions**

United States Constitution
   Fourteenth Amendment     17, 18

**Statutes**

28 United States Code
   § 2254     1, 5, 6
   § 2254(d)     12, 20
   § 2254(d)(1)     12
   § 2254(d)(2)     12
   § 2254(e)(1)     12

California Evidence Code
   § 140     21
   § 352     13, 14
   § 1101(b)     13
   § 1108     14
   § 1109     13-16
   § 1200(a)     21
   § 1370     20

California Penal Code
   § 187(a)     4
   § 484e(c)     4
   § 666     4
   § 667(a)(1)     4
   § 667(b)-(i)     4
   § 1538.5     18
   § 12022(b)(1)     4

08CV0767 BTM (WMc)

## TABLE OF AUTHORITIES  (continued)

| | Page |
|---|---|

**Other Authorities**

Anti-Terrorism and Effective Death Penalty Act of 1996
   (AEDPA)                                                  2, 12, 14, 15

CALJIC No.
   2.50.1                          16
   2.50.2                          16
   2.50.02                       16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GARY W. SCHONS
   Senior Assistant Attorney General
4  KEVIN VIENNA
   Supervising Deputy Attorney General
5  DOUGLAS P. DANZIG, State Bar No. 153048
   Deputy Attorney General
6   110 West A Street, Suite 1100
   San Diego, CA 92101
7  P.O. Box 85266
   San Diego, CA 92186-5266
8  Telephone: (619) 645-2285
   Fax: (619) 645-2271
9  Email: Doug.Danzig@doj.ca.gov

10 Attorneys for Respondent

11                    IN THE UNITED STATES DISTRICT COURT

12              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

| 14 | **EUGENE ORANGE,** | 08cv0767-BTM (WMc) |
|----|----|----|
| 15 | Petitioner, | **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS;** |
| 16 | v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN** |
| 17 | **A. HEDGEPETH, Warden, et al.,** | **SUPPORT THEREOF** |
| 18 | Respondent. | 28 U.S.C. § 2254 |

19

20          RESPONDENTS, A. Hedgepeth, et al., by and through counsel, Edmund G. Brown Jr.,

21  Attorney General for the State of California, and Douglas P. Danzig, Deputy Attorney General, files

22  this Answer to Petition For Writ Of Habeas Corpus Under 28 U.S.C. § 2254 By A Person In State

23  Custody (Petition), pursuant to an Order issued by this Court.  Respondent hereby asserts:

24                                         I.

25          Petitioner is lawfully in Respondent's custody following his conviction in San Diego

26  Riverside County Superior Court case number SCN165993 of one count of first-degree murder, and

27  one count of acquiring a credit card with the intent to defraud, and a true finding on a weapon-use

28  allegation.

II.

The cause of Petitioner's custody is an indeterminate prison term of 100 years to life, plus a determinate term of 11 years.

III.

The Anti-Terrorism and Effective Death Penalty Act of 1996 governs this case.

IV.

Petitioner is not entitled to federal habeas corpus relief on grounds one, two and four, because the State court determination of the merits of the claims was not contrary to, nor did it involve unreasonable applications of, controlling precedent.

V.

Petitioner is not entitled to federal habeas corpus relief on ground three, because consideration of the claim is barred.

VI.

Petitioner is not entitled to an evidentiary hearing to resolve his claims because his claims are based on facts developed in state court proceedings.

VII.

The Memorandum of Points and Authorities in support of the Answer is hereby incorporated by reference.

VIII.

Except as herein expressly admitted, Respondent denies each contention and allegation in the Petition, denies Petitioner's confinement is in any way illegal, and denies that any of Petitioner's constitutional rights have been, or are being, violated in any way.

///
///
///
///
///
///

08CV0767 BTM (WMc)

1    Wherefore, Respondent respectfully requests that the Petition for Writ of Habeas Corpus

2    be denied with prejudice, that any request for an evidentiary hearing be denied, and that any request

3    for a certificate of appealability be denied.

4        Dated:  August 19, 2008

5                    Respectfully submitted,

6                    EDMUND G. BROWN JR.
                    Attorney General of the State of California

7                    DANE R. GILLETTE
                    Chief Assistant Attorney General

8                    GARY W. SCHONS
                    Senior Assistant Attorney General

9
                    KEVIN VIENNA
10                   Supervising Deputy Attorney General

11

12                   s\Douglas P. Danzig

13                   DOUGLAS P. DANZIG
                    Deputy Attorney General

14                   Attorneys for Respondent

15   DPD:dp
     70133969.wpd
16   SD2008801136

17

18

19

20

21

22

23

24

25

26

27

28

08CV0767 BTM (WMc)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## PROCEDURAL BACKGROUND

On December 21, 2004, in San Diego County Superior Court case number SCN165993, a jury convicted Petitioner of one count of first-degree murder (Cal. Penal Code § 187(a)), and one count of acquiring a credit card with intent to defraud, having a prior conviction within the meaning of California Penal Code § 666 (Cal. Penal Code § 484e(c)). (Lodgment 1 (Clerk's Transcript from Petitioner's direct appeal in state court) (CT), at 148-49.) The jury also made a true finding on a weapon-use allegation (Cal. Penal Code § 12022(b)(1)). (CT at 148.) In a bifurcated proceeding, the court made true findings on allegations that Petitioner had two prior serious-felony convictions within the meaning of California Penal Code § 667(a)(1), and two prior strikes within the meaning of California Penal Code § 667(b)-(i). (CT at 299.) On February 10, 2005, the court sentenced Petitioner to prison for an indeterminate term of 100 years to life, to be followed by a determinate term of 11 years, consisting of 25 years to life on the murder charged, tripled under the Three Strikes law, a term of 25 years to life on the Penal Code § 484e(c) conviction, plus 5 years each on the prior serious-felony convictions, and one year on the weapon-use enhancement. (CT at 248-49, 300.)

Petitioner appealed the judgment, California Court of Appeal case number D045936. In an unpublished opinion filed April 21, 2006, the California Court of Appeal affirmed the judgment in all respects. (Lodgment 2.)

On April 28, 2006, Petitioner filed a Petition For Rehearing in case number D045936. (Lodgment 3.) In an order filed May 4, 2006, the California Court of Appeal denied the Petition For Rehearing. (Lodgment 4.)

On May 23, 2006, Petitioner filed a Petition For Review with the California Supreme Court, case number S143632, seeking discretionary review of the opinion in case number D045963. (Lodgment 5.) In an order filed July 26, 2006, the California Supreme Court denied the Petition For Review. (Lodgment 6.)

///

1    On October 6, 2006, Petitioner filed a Petition For Writ Of Certiorari with the Supreme

2  Court of the United States, docket number 06-6997, seeking review of the California Supreme

3  Court's denial in case number S143632.  On December 4, 2006, the Supreme Court denied the

4  Petition for Writ of Certiorari.

5    On April 23, 2007, Petitioner filed a "Petition For Writ Of Habeas Corpus Under 28

6  U.S.C. § 2254 By A Person In State Custody" (07cv0749 Petition), in the United States District

7  Court for the Southern District of California, civil number 07cv0749-J (AJB).  In an Order filed May

8  11, 2007, the District Court dismissed the 07cv0749 Petition for failure to pay the filing fee.  The

9  Order also notified Petitioner that the 07cv0749 Petition failed to allege he had exhausted ground

10  four, and advised him of the resultant options available to him.  In ground 4, Petitioner seemed to

11  claim ineffective assistance of appellate counsel, in that counsel did not raise a claim that the

12  admission of two notes written by the murder victim, Petitioner's wife, amounted to constitutional

13  error.  In an Order filed June 1, 2007, this Court granted Petitioner's application to proceed in forma

14  pauperis, but held the action remained dismissed without prejudice to Petitioner to select among the

15  options identified by the District Court in its May 11, 2007, Order.

16    On June 14, 2007, Petitioner filed a Motion to Stay the 07cv0749 Petition.  On September

17  25, 2007, Respondent filed an Opposition To Petitioner's Motion For Stay And Abeyance.

18    On October 17, 2007, Petitioner filed a Petition For Writ Of Habeas Corpus with the

19  California Supreme Court, case number S157283.  (Lodgment ?.)  The Petition presented one ground

20  for relief, i.e., ineffective assistance of appellate counsel.  (Lodgment ? at ?.)

21    On October 22, 2007, Petitioner filed a Petition For Writ Of Habeas Corpus with the

22  United States District Court for the Southern District of California, civil number 07cv02066-JLS

23  (WMc).[1]  On December 12, 2007, Petitioner filed a First Amended Petition in case number

24  07cv2066-JLS (WMc).

25  ///

26

27

---

28  1.  Instead of using the form approved by the United States District Court for the Southern
District of California, Petitioner used the form approved by the California Supreme Court.

08CV0767 BTM (WMc)

5

1       On December 12, 2007, the Magistrate Judge filed a Report And Recommendation,

2  recommending the Motion To Stay in case number 07cv0749 be denied.

3       In an Order filed January 8, 2008, the Court Ordered the First Amended Petition in civil

4  number 07cv2066-JLS (WMc) dismissed as duplicative.

5       In an order filed March 18, 2008, the District Court adopted the Report And

6  Recommendation in case number 07cv0749, and denied the Motion To Stay.

7       On April 9, 2008, the California Supreme court denied the habeas petition in case number

8  S157283.

9       On April 28, 2008, Petitioner filed the Petition For Writ Of Habeas Corpus Under 28

10  U.S.C. § 2254 By A Person In State Custody (Petition) that is presently pending in this case.  In an

11  Order filed May 5, 2008, this Court Ordered Respondent to file a motion to dismiss or an answer to

12  the Petition.

**II.**

**FACTUAL BACKGROUND**[2]

15       Orange and Zeda Barnett married in 2001 after dating for only a few months. Orange

16  moved into an apartment at the Glenbrook Terrace apartment complex in Escondido with

17  Zeda and her three sons from prior relationships.

18       Zeda worked in the admissions department at Palomar College. Her desk was near

19  the desks of her coworkers. Orange usually called Zeda at work several times a day. Zeda's

20  coworkers were able to overhear Zeda's side of her conversations with Orange, and

21  occasionally they could hear what Orange was saying to Zeda. Zeda was visibly

22  uncomfortable during these calls. Her coworkers sometimes heard Orange shouting at

23  Zeda over the telephone. The conversations were often about money, and Zeda would

24  sometimes be in tears when the calls ended. Zeda told a campus police officer that if

---

27
      2.  The "Factual Background" is taken verbatim from the "Factual Background" section of

28  the California Court of Appeal's opinion in Petitioner's direct appeal in State court. (Lodgment 2.)

1   Orange heard male voices in the background while she was on the telephone with him at

2   work, he would question her.

3        Zeda's coworkers witnessed a number of tense exchanges between Zeda and Orange

4   when he would come to her workplace to take her to lunch, to borrow her ATM card,[FN4]

5   or to pick her up after work. Orange was often angry and demanding, particularly when

6   Zeda refused to give him money or her ATM card. On one occasion, Zeda's coworkers

7   convinced her to go to lunch with them despite her attempt to back out of their plans at the

8   last minute because she was concerned that Orange was already upset with her and might

9   come to the college. Orange came to the restaurant and proceeded to argue with Zeda just

10  outside the restaurant. Her coworkers witnessed the exchange and could tell that during

11  the altercation, "[Zeda was] being yelled at pretty loudly."

12        FN4. Apparently Orange frequently borrowed Zeda's ATM card when he visited

13        her workplace.

14        Orange became angry with Zeda when he arrived at the college one day and found

15  Zeda helping a male student. After saying something to Zeda over the counter, Orange sat

16  in the lobby and "glared" at her as she continued helping the student. Sometimes when

17  Zeda would not give Orange money or her ATM card, Orange would sit where Zeda and

18  her coworkers could see him, waiting for her.

19        Orange maintained control of the family's two vehicles, including Zeda's Nissan

20  Sentra, and kept the keys in his possession. He dropped Zeda off at work in the morning,

21  picked her up for lunch, and picked her up again at the end of the day. Orange insisted on

22  doing all of the driving. According to the testimony of Zeda's friends and family, Orange

23  drove aggressively and carelessly, as if he had "road rage."

24        Orange was mean to Zeda's children. He would yell at the boys, calling the oldest boy

25  a "punk," and saying that one of her sons was "going to be a little fag." Zeda's sister

26  testified that the boys "were always acting as if they were scared."

27        Zeda attempted to leave Orange at least twice prior to July 2003. On one occasion,

28  Zeda left to stay with her mother, and on another, she went to Los Angeles for two weeks.

08CV0767 BTM (WMc)

7

1   While Zeda was in Los Angeles, Orange called one of Zeda's friends repeatedly because

2   he believed Zeda was staying at the friend's home. He told the friend that he would kill

3   himself if Zeda left him.

4       In April 2003, Zeda obtained a restraining order against Orange. A campus police

5   officer was instructed to complete extra patrols of the admissions area after he was

6   informed by his superior officers that Zeda had filed for a restraining order against her

7   husband, and that the other employees were afraid. While patrolling the area on the day

8   Zeda filed for the restraining order, the officer noticed Zeda drive into the parking lot with

9   one of her sons in the car, and he called to her. Teary-eyed, Zeda told the officer that

10  Orange would kill her. Zeda apparently did not serve the restraining order on Orange, and

11  later reconciled with him.

12      In early July 2003, Zeda and Orange found a house to rent together and made

13  tentative arrangements to move into the house on August 1. At the time, Zeda and Orange

14  had been living in their Glenbrook Terrace apartment on a month-to-month basis for about

15  a year because their original lease had expired in September 2002. The landlord had not

16  renewed the lease because of complaints of smells of marijuana coming from their

17  apartment and reports that the apartment was being poorly maintained. The landlord

18  allowed Zeda and Orange to stay in the apartment until they found another place to live,

19  but after almost 11 months of waiting, he finally told them that they would have to move

20  out or he would commence eviction proceedings. Zeda and Orange agreed to move out of

21  Glenwood Terrace by the end of July 2003.

22      By late July, however, Zeda had again decided to leave Orange. Zeda looked for an

23  apartment nearby, and visited one particular apartment complex three times before renting

24  an apartment there. Zeda brought Orange along on one of those visits, but she told the

25  manager that Orange was not going to be living in the apartment, and that they were

26  "going through a divorce." Zeda and her sons started moving their belongings into the new

27  apartment on July 25.

28

On July 25, Zeda called the police and requested that they meet her at the old apartment. She told them that she was worried that Orange would arrive while she was there, and she wanted an officer to serve him with a restraining order. Orange arrived before Zeda had an opportunity to retrieve the restraining order for the officer. He began yelling at the officer and appeared to be angry. When Orange started to approach the officer, the officer ordered him to stop, drew his taser, and told Orange that he would deploy the taser if Orange did not back up and sit down. Other officers arrived at the scene and handcuffed Orange. The original responding officer then served Orange with a copy of the restraining order. After serving the restraining order, the police officers helped Zeda load some of her belongings into a car and stayed until she left the complex.

On July 28, Zeda called her good friend Lisa Galbreath because Zeda had a flat tire and had left her purse at Galbreath's home. Galbreath called the Automobile Association of America to tow Zeda's car. Zeda apparently also called Orange, despite the restraining order, to ask him to give her a ride to Galbreath's house. While discussing the flat tire incident with another friend, Zeda explained that she called Orange that day because "she didn't have a choice." She said that Orange was going to "get help" and go to counseling.

An employee of the Glenbrook Terrace apartments saw Orange moving belongings out of his apartment on July 29, 2003. That night, Zeda put her children to bed in their new apartment, drew water for a bath, and then went outside to move her car. Zeda did not return to the apartment. The next day, Zeda's sons waited for her to return. When she did not return by mid-to-late afternoon, they called Zeda's mother. Zeda's mother asked the boys to walk to her house. After giving them something to eat, Zeda's mother called the police to report her daughter missing.

In response to Zeda's mother's call, an Escondido police officer went to the Glenbrook Terrace apartment. The apartment was on the ground floor, but the officer could not see inside the apartment because all of the lights were turned off and the windows and blinds were closed. The officer knocked on the front door. After receiving

1    no response, he checked to see if the door was locked, which it was. The officer then went

2    to Zeda's mother's house and took a missing person report.

3        On July 31, police learned that three ATM withdrawals had been made in quick

4    succession from Zeda's individual bank account with Washington Mutual Bank just after

5    7:00 a.m. on July 30.  Bank surveillance tapes for all three transactions showed Orange

6    alone in a car that might have been Zeda's Nissan Sentra. No one other than Zeda was

7    authorized to use the ATM card on her account.

8        Shortly after noon on July 31, 2003, a team of detectives went to the Glenbrook

9    Terrace apartment to conduct surveillance. A van registered to Orange was parked at the

10   apartment complex, but the officers did not see Zeda's Nissan Sentra. The detectives asked

11   the apartment manager when the apartment's residents were last seen there. They obtained

12   Orange's telephone number at the apartment, and a pass key, from the manager.

13       When the detectives returned to Orange's apartment, the unit was still locked and the

14   window shades were drawn. The detectives saw no sign of forced entry into the apartment.

15   Telephone calls to the apartment were picked up by an answering machine. The detectives

16   decided to enter the apartment out of concern that Zeda might be inside the apartment and

17   in need of assistance. At approximately 2:30 p.m., after announcing their presence, police

18   officers entered the unit using the pass key. The apartment was dark and warm, and

19   appeared cluttered. In one of the bedrooms, police found Zeda's nude body on the bed

20   under a comforter. No one else was in the apartment.

21       Police officers then obtained a search warrant and searched the unit. They found a

22   butcher's knife in the kitchen and sent it for testing. Officers also found a glass pipe with

23   what turned out to be methamphetamine on it in the bedroom where Zeda's body was

24   found. When police pressed the redial button on the telephone in the apartment, it dialed

25   Washington Mutual Bank.

26       Police remained at the scene through the early morning hours of August 1. An

27   assistant medical examiner who was called to the scene just after midnight on August 1,

28   estimated that Zeda had been killed 24 to 72 hours earlier. An autopsy revealed that Zeda

08CV0767 BTM (WMc)

10

1    died as a result of 11 stab wounds to her head and neck. One wound penetrated her right

2    check and broke a molar, which was found, along with blood, in her stomach, indicating

3    that she was alive at the time that wound was inflicted. She also had defensive stab

4    wounds to her hands and a blunt-force injury to her head.

5        A criminalist determined from the blood at the scene that the entire struggle had

6    occurred while Zeda was on the bed, and that the blanket was placed over her body after

7    the stab wounds were inflicted. There was no evidence of forcible rape, no drugs or

8    alcohol in her system, and no track marks or other signs of drug use on her body. Orange's

9    DNA was found on swabs taken from Zeda's vagina and anus.

10        Police were unable to locate Orange for several days. On August 5, 2003, a person

11    using an identity card belonging to Kwame Jackson, Zeda's youngest son, sought and

12    received clothing, a blanket, and a backpack from Brother Benno's Foundation shelter in

13    Oceanside. An employee at Brother Benno's Foundation recalled that either that day or the

14    day before, Orange, identifying himself as "Kidd," appeared at the Foundation's drug and

15    alcohol program. Orange ate breakfast and said he wanted to join the program. He was put

16    to work, but a program coordinator for the drug and alcohol program asked him to leave

17    after about a half-hour because his behavior was "too bizarre ."

18        On August 5, 2003, Orange contacted Charles Simons, a property owner for whom

19    Orange had performed handyman work in the past. Orange apparently asked to borrow

20    some money from Simons. After agreeing to meet Orange in Oceanside, Simons contacted

21    police detectives with this information. Officers arrested Orange at the agreed-upon

22    location for the meeting. While Orange was on the ground being handcuffed, an officer

23    noticed a wadded up and wet social security card near Orange's head. The card was in the

24    name of Kwame Jackson. Testing revealed Orange's DNA on the card.

25        Police located Zeda's red Nissan Sentra near where Orange was arrested. Orange had

26    in his possession a set of keys to that car at the time of his arrest.

27    (Lodgment 2 at 4-10.)

28

## III.

## THE AEDPA STANDARD

In cases subject to the AEDPA, a petitioner may not receive relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was based on "an unreasonable determination" of the state court evidence. 28 U.S.C. § 2254(d).

The "contrary to" and "unreasonable application" clauses contained in 28 U.S.C. § 2254(d) have distinct meanings. *Williams v. Taylor*, 529 U.S. 362, 404 (2000). A decision is "contrary to" United States Supreme Court authority if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but reaches a different result. *Id.* at 413-14. A decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of that case. *Id.* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; in order for a federal court to grant a habeas writ, the state court decision must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citing *Williams v. Taylor*, 529 U.S. at 409-410, 412).

When a state court does not find a constitutional violation, a federal court may still grant relief if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under the AEDPA, a state court's factual findings are entitled to a presumption of correctness. Therefore, a petitioner must prove the state court's factual findings erroneous by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Taylor v. Maddox,* 366 F.3d 992, 999 (9th Cir.2004). Mixed questions of fact and law are reviewed under the "contrary to" and "unreasonable application" clauses in 28 U.S.C. § 2254(d)(1). *Lambert v. Blodgett*, 393 F.3d 943, 976 (9th Cir. 2004). A state court's factual findings underlying its conclusion on mixed issues are accorded a presumption of correctness. *Id.*

## IV.

**GROUND ONE SHOULD BE DENIED BECAUSE THE STATE COURT DETERMINATION OF THE MERITS OF THE CLAIM WAS CONSISTENT WITH CONTROLLING PRECEDENT AND REASONABLE**

In ground one, Petitioner claims the trial court violated his rights to due process, a fair trial, and equal protection when it admitted evidence regarding Petitioner's prior acts of domestic violence.[3] In support of his claim, Petitioner argues that the evidence was so prejudicial that it rendered his trial fundamentally unfair, and that he was not treated the same as similarly situated persons. (Petition at 6; Attachments to Petition at 2-14.) Petitioner's claim is without merit. The Supreme Court has expressly left open the question of whether the admission of propensity evidence violates due process. As to the equal protection aspect of ground one, Petitioner has failed to establish that he is a member of a suspect class. Therefore, the California Court of Appeal's determination of the merits of Petitioner's claims was neither contrary to, nor did it involve an unreasonable application of, controlling precedent.

**A.    Background**

Prior to trial, pursuant to California Evidence Code §§ 1101(b)[4] and 1109,[5] the prosecution sought to admit evidence that Petitioner had committed prior acts of violence against

---

3. Respondent has paraphrased Petitioner's claim.

4. California Evidence Code § 1101(b) provides:
   (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.

5. California Evidence Code § 1109 provides in relevant part:
   (a)(1) Except as provided in subdivisions (e) or (f), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352.

1  Zeda and had threatened her. (CT at 55-59.) Petitioner objected on hearsay grounds.[6/] (Lodgment

2  7 (Reporter's Transcript from Petitioner's direct appeal in state court) (RT) at 135.) The court

3  granted the prosecution's request, finding the probative value of the evidence outweighed any

4  prejudicial effect within the meaning of California Evidence Code § 352.[7/] (RT at 136.)

5  **B.    Analysis Of Due Process Claim**

6         The last reasoned state court determination on the merits of Petitioner's claim is the

7  California Court of Appeal's opinion in Petitioner's direct appeal. There, the court rejected the

8  notion that admission of prior acts of domestic violence violates due process. The court explained

9  that the California Supreme Court has held that California Evidence Code § 1108, which is virtually

10  identical to Evidence Code § 1109 except that the former concerns evidence of prior sexual offenses,

11  vis a vis evidence of prior domestic violence, does not violate due process. (Lodgment 2 at 11-13,

12  citing *People v. Falsetta*, 21 Cal.4th 903 (1999).)

13        Nothing about the state court decision was contrary to, or involved an unreasonable

14  application of, controlling precedent. In *Estelle v. McGuire*, 502 U.S. 62, 75 n.5, 112 S. Ct. 475, 116

15  l. Ed. 2d 385 (1991) (*Estelle*), the Supreme Court expressly left open the question of whether the

16  admission of evidence of other crimes solely to prove propensity violates due process. Accordingly,

17  there is no clearly-established Supreme Court precedent on this issue. And when there is no firmly-

18  established rule, there is no viable claim under the AEDPA. *Penry v. Johnson*, 532 U.S. 782, 794-

19  795, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001); *see Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir.

20  2008) (because the Supreme Court has expressly left open the question of whether it violates due

21

22  6. California Evidence Code § 1101(a) provides:
           (a) Except as provided in this Section and in Sections 1102, 1103, 1108, and
23  1109, evidence of a person's character or a trait of his or her character (whether in
    the form of an opinion, evidence of reputation, or evidence of specific instances of
24  his or her conduct) is inadmissible when offered to prove his or her conduct on a
    specified occasion.
25

26  7. California Evidence Code § 352 provides:
           The court in its discretion may exclude evidence if its probative value is
27  substantially outweighed by the probability that its admission will (a) necessitate
    undue consumption of time or (b) create substantial danger of undue prejudice, of
28  confusing the issues, or of misleading the jury.

08CV0767 BTM (WMc)

14

1   process to use a defendant's past crimes in order to show a propensity for criminal activity, the state

2   court's determination that admission of said evidence did not constitute a due process violation was

3   neither contrary to, nor did it involve an unreasonable application of, controlling precedent); *see*

4   *Davis v. Griggs*, 443 Fed.3d 1155, 1158 (9th Cir. 2006) (noting that where the Supreme Court has

5   not established clear law, a state court's merits adjudication cannot be contrary to or constitute an

6   unreasonable application under the AEDPA).   Therefore, the due-process aspect of ground one

7   should be denied.

8     **C.   Analysis Of Equal Protection Claim**

9       Regarding the equal-protection portion of ground one, in *United States v. LeMay*, 260 F.3d

10   1018 (9th Cir. 2001) (*LeMay*), the court explained that in order to establish an equal protection

11   violation based on the admission of evidence concerning a prior offense, a defendant must show that

12   he is a member of a suspect class or that the challenged provision of law burdens a fundamental

13   right, and that sex offenders are not a suspect class. *Id.* at 1030-31 (citing *Washington v. Davis*, 426

14   U.S. 229, 239, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976) (Fifth Amendment's due process clause

15   prohibits invidious discrimination between individuals or groups)). Here, consistent with *LeMay*,

16   the state court of appeal explained that perpetrators of domestic violence offenses are not a suspect

17   class. (Lodgment 2 at 14-15.)

18       Therefore, the question is whether Evidence Code § 1109 burdens a fundamental right.

19   The state court reasoned that because those who commit domestic violence are not members of a

20   suspect class, the analysis turns on whether there is a rational basis for treating defendants charged

21   with committing domestic violence differently than defendants accused of other crimes. (*See*

22   Lodgment 2 at 15, citing *Estelle v. Dorrough*, 420 U.S. 534, 537-38 (1975).) The state court

23   concluded there is such a basis; without the inference to be drawn from propensity evidence, the

24   escalating nature of domestic violence is concealed. (Lodgment 2 at 15 n. 6 (citing *People v.*

25   *Johnson*, 77 Cal.App.4th 410, 419 (2000) (discussing the legislative history of Evidence Code §

26   1109)).) Nothing about the state court's analysis of the rational basis test is contrary to, or involves

27   an unreasonable application of, controlling Supreme Court precedent.   Accordingly, the equal-

28   protection aspect of ground one should be denied.

## V.

**PETITIONER IS NOT ENTITLED TO HABEAS RELIEF ON GROUND TWO, BECAUSE THE STATE COURT DETERMINATION OF THE MERITS OF THE CLAIM WAS CONSISTENT WITH CONTROLLING LAW AND REASONABLE**

In ground two, Petitioner claims that California Evidence Code § 1109 and its corresponding instructions, namely CALJIC Nos. 2.50.02, 2.50.1, and 2.50.2,[8/] allowed the jury to

---

8. CALJIC No. 2.50.02 provides in pertinent part:
[¶] "If you find that the defendant committed a prior offense involving domestic violence, you may, but are not required to, infer that the defendant had a disposition to commit [another] [other] offense[s] involving domestic violence. If you find that the defendant had this disposition, you may, but are not required to, infer that [he][she] was likely to commit and did commit the crime [or crimes] of which [he][she] is accused. [¶] However, if you find by a preponderance of the evidence that the defendant committed a prior crime or crimes involving domestic violence, that is not sufficient by itself to prove beyond a reasonable doubt that [he][she] committed the charged offense[s]. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime."

CALJIC No. 2.50.1 provides:
"Within the meaning of the preceding instruction[s], the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed [a] [crime[s]] [or] [sexual offense[s]] other than [that] [those] for which [he][she] is on trial. [¶] You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that [a][the] defendant committed the other [crime[s]][or] [sexual offense[s]]. [¶] [If you find other crime[s] were committed by a preponderance of the evidence, you are nevertheless cautioned and reminded that before a defendant can be found guilty of any crime charged [or any included crime] in this trial, the evidence as a whole must persuade you beyond a reasonable doubt that the defendant is guilty of that crime.]"

CALJIC No. 2.50.2 provides:
[¶] " 'Preponderance of the evidence' means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it. [¶] You should consider all of the evidence bearing upon every issue regardless of who produced it."

08CV0767 BTM (WMc)

16

1    convict him based on a preponderance-of-the-evidence standard, rather than proof beyond a

2    reasonable doubt.[9] (Petition at 7; Attachments to Petition at 34-35.)

3         Faulty jury instructions may justify federal habeas corpus relief, but only if the instructions,

4    by themselves, so infected the entire trial that the resulting conviction constitutes a due process

5    violation. *See Estelle,* 502 U.S. at 72. Contested instructions may not be judged in isolation.

6    Rather, they must be considered in the context of the instructions as a whole and the trial record. *Id.*

7    In order to constitute a due process violation, the instructions must be more than just erroneous. A

8    petitioner must demonstrate a reasonable likelihood that in light of the instructions as a whole, the

9    jury applied the contested instructions in such a way that his constitutional rights were violated. *See*

10   *Carriger v. Lewis,* 971 F.2d 329, 334 (9th Cir.1992) (en banc); *see also McGuire,* 502 U.S. at 72.

11        The Due Process Clause of the Fourteenth Amendment protects a defendant against

12   conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

13   charged crime. *See In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

14   Although inferences and presumptions often take a prominent position in the fact finding process,

15   they do not infringe on the right to due process unless "they undermine the jury's responsibility in

16   a criminal trial to find the ultimate facts (i.e., the elements of the crime) beyond a reasonable doubt.

17   *Ulster County Court v. Allen,* 442 U.S. 140, 156, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979). The

18   United States Supreme Court has distinguished between mandatory presumptions, which encroach

19   upon the reasonable doubt standard, and permissive presumptions or inferences, which leaves the

20   trier of fact free to accept or reject the inference suggested by the evidence. *Id.* at 157.

21        The last reasoned state court decision addressing Petitioner's claim is the California Court

22   of Appeal's opinion in Petitioner's direct appeal. There, citing *People v. Reliford,* 29 Cal.4th 1007,

23   1012-16 (2003), the court held the challenged instructions do not violate due process. (Lodgment

24   2 at 16-18.) The Ninth Circuit has found that when a state court relies on *Reliford* in addressing a

25   challenge to CALJIC instructions regarding preponderance of the evidence to prove prior acts, it

26   does not constitute an unreasonable application of controlling precedent as to the burden of proof.

27

28        9. Respondent has paraphrased Petitioner's claim.

1    *See Hassinger v. Adams*, 243 Fed.Appx. 286 (9th Cir. 2007).  Accordingly, ground two is without

2    merit and should be denied.

3                                        **VI.**

4    **PETITIONER IS NOT ENTITLED TO HABEAS RELIEF ON GROUND**
     **THREE, BECAUSE CONSIDERATION OF THE CLAIM IS BARRED**

5

6            In ground three, Petitioner claims admission of evidence obtained via a warrantless entry

7    violated his Fourth Amendment rights.  (Petition at 8; Attachments to Petition at 15-28.)  The claim

     should be denied because consideration of it is barred.

8
             Fourth Amendment claims are not cognizable in federal habeas corpus proceedings if the
9
     petitioner has had a full and fair opportunity to litigate the claims in state court.  *Stone v. Powell*,
10
     428 U.S. 465, 481-82, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976); *Siripongs v. Calderon*, 35 F.3d
11
     1308, 1321 (9th Cir. 1994).  The Ninth Circuit has held that California Penal Code section 1538.5,
12
     which permits a defendant to move to suppress evidence on the ground that it was obtained as a
13
     result of a Fourth Amendment violation, provides criminal defendants with a full and fair
14
     opportunity to litigate their claims in state court.  *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899
15
     (9th Cir. 1996); *Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990).  The Ninth Circuit has also
16
     held that the relevant inquiry is whether a "petitioner had the opportunity to litigate his claim, not
17
     whether he did in fact do so or even whether the claim was correctly decided."  *Id.* (citing *Gordon
18
     v. Duran*, 895 F.2d at 613, and *Locks v. Sumner,* 703 F.2d 403, 408 (9th Cir. 1983)).
19
             Here, the record from Petitioner's direct appeal in state court indicates that, prior to the
20
     beginning of trial he moved to suppress the warrantless police entry into the Glenbrook Terrace
21
     apartment rented by Petitioner and the victim, that the court held a hearing on the motion, and that
22
     the court denied the motion.  (CT at 12-32; RT at 76-113.)  Accordingly, consideration of the claim
23
     presented in ground four is barred under *Stone v. Powell*, 428 U.S. at 481-82.
24

25

26

27

28

08CV0767 BTM (WMc)

## VII.

**PETITIONER IS NOT ENTITLED TO HABEAS RELIEF ON GROUND FOUR, BECAUSE THE CALIFORNIA SUPREME COURT'S DETERMINATION OF THE MERITS OF PETITIONER'S CLAIMS WAS CONSISTENT WITH CONTROLLING PRECEDENT AND REASONABLE**

In ground four, Petitioner claims he was deprived of his Sixth Amendment right to the effective assistance of counsel. Specifically, he argues that appellate counsel was deficient because he failed to include in the petition for review a claim that the admission of two notes written by the murder victim, Petitioner's wife, violated his right to confrontation.[10] (Petition at 9; Attachments to Petition at 39-49.)

### A.   Background

After the victim's death, her mother went through her apartment and discovered two notes that Zeda had written and signed. (RT at 979-81.) One was directed to Lisa Galbreath, a friend of the victim. (RT at 979-80.) The note, dated June 3, 2003 (RT at 980), read as follows:

I left the boys sleeping while going with Eugene to get a truck. If they have giving [*sic*] you this note[,] it means I did not return, if this is true. Please act as executor of my estate, and make sure all of my life insurance policies are put in an account for my boys until age 18 receive partial and then the balance at age 21. Thanks you[.]  I love you.

Zeda Barnett.

(People's Exhibit 49.)[11]

---

10. In support of the claim, Petitioner cites *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (*Crawford*). In light of the citation, Respondent assumes that the theory underlying Petitioner's ineffective-assistance-of-appellate-counsel claim is that counsel should have raised a claim in the Petition For Review, to the effect that admission of the notes violated Petitioner's rights under the confrontation clause.

11.   The language of the note does not appear in the Reporter's Transcript or Clerk's Transcript from Petitioner's direct appeal in state court. The cited language is taken from page 37 of the Appellant's Opening Brief in the direct appeal. (Lodgment 8.)

08CV0767 BTM (WMc)

1    The second note, also dated June 3, 2003, was written to Zeda's sons. The note directed

2  the sons to give the first note to Galbreath if Zeda did not return. (RT at 980-81; People's Exhibit

3  50.) Petitioner objected to the admission of the notes, on hearsay grounds. (RT at 983, 1011, 1049.)

4  The court ruled the notes admissible. (RT at 1011, 1049.) Later, the court stated it was relying on

5  California Evidence Code § 1370. (RT at 1128-29.)

6    **B.    Analysis**

7    Petitioner never presented this claim to the California Court of Appeal. He only raised it

8  in the California Supreme Court, in his habeas petition in case number S157283, which was

9  summarily denied. Thus, there is no reasoned state court decision addressing the merits of the claim.

10    The Ninth Circuit has held that, where there is no reasoned state-court opinion on some

11  of the issues raised in a federal petition, the federal court must conduct an independent review of the

12  record to determine whether the state court decision was contrary to, or an unreasonable application

13  of, controlling United States Supreme Court precedent. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th

14  Cir. 2000). This Court must therefore identify the relevant United States Supreme Court authority

15  and apply that law to the record in the light most favorable to the state-court decision. Such an

16  approach embodies the long-standing principle that unarticulated findings that are necessary to the

17  state court's conclusions of mixed questions of fact and law are presumed to be correct. *See, e.g.,*

18  *Marshall v. Longberger*, 459 U.S. 422, 433, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983) (presumption

19  applied to credibility determination which was implicit in rejection of defendant's claim). Of course,

20  a federal court must presume that state courts "know and follow the law" (*Himes v. Thompson*, 336

21  F.3d 848, 853 (9th Cir. 2003), citing *Woodford v. Visciotti*, 537 U.S.19, 24, 123 S. Ct. 357, 360, 154

22  L. Ed. 2d 279 (2002)), and section 2254(d) "demands that state-court decisions be given the benefit

23  of the doubt." *Visciotti*, 537 U.S. at 24.

24    The controlling law is set forth in *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 145

25  L. Ed. 2d 756 (2000) (*Smith*). In *Smith*, the Supreme Court held the test for ineffective assistance

26  of appellate counsel is: (1) whether counsel failed to find non-frivolous, arguable issues; and (2)

27  whether, but for counsel's failure to file a merits brief on the issue, a petitioner would have prevailed

28  on appeal. *Id.* at 285. An appellate counsel is not required to raise issues just to avoid the risk of

1   being found ineffective. *Gustave v. U.S.*, 627 F.2d 901, 906 (9th Cir. 1980). Weeding out weaker

2   issues is one of the hallmarks of appellate counsel. *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir.

3   1989). Thus, an appellate counsel has no constitutional obligation to raise every non-frivolous issue

4   requested by a defendant in the first place. *Jones v. Barnes*, 463 U.S. 745, 751-754, 103 S. Ct. 3308,

5   77 L. Ed. 2d 987 (1983).

6        Here, there was no reason for appellate counsel to raise a confrontation-clause claim based

7   on *Crawford*, for two reasons. First, in *Crawford*, the Supreme Court held that, where the

8   prosecution seeks to admit "testimonial" evidence of a witness not present at trial, the confrontation

9   clause requires that the defendant have had a prior opportunity to cross-examine the witness.

10  *Crawford*, 541 U.S. at 68-69. Nevertheless, the High Court declined to provide a comprehensive

11  definition of the term "testimonial." *Id.* at 68. But regardless of how the term is defined, it would

12  not have embraced the notes, because they merely gave directions to Zeda's sons and to Galbreath,

13  and implied that two months before she was murdered Zeda feared for her life. In other words,

14  neither note alluded to any percipient event (*see* California Evidence Code § 140 ("evidence" means

15  testimony, writings, material objects, or other things presented to the senses that are offered to prove

16  the existence or nonexistence of a fact)), and therefore the evidence was not testimonial.

17       Second, the notes were not offered for the truth of the matters asserted, and therefore did

18  not constitute hearsay. *See* California Evidence Code § 1200(a) ("'Hearsay evidence' is evidence

19  of a statement that was made by a witness while testifying at the hearing and that is offered to prove

20  the truth of the matter asserted."); *see Crawford*, 541 U.S. at 59 n. 9 (the confrontation clause does

21  not bar testimonial statements offered for purposes other than establishing the truth of the matter

22  asserted). The matters asserted in the note to Galbreath were not asserted for the truth; they were

23  introduced for the non-hearsay purpose of showing that less than two months before she was

24  murdered, Zeda feared for her life before going to meet Petitioner, and that she made hurried

25  arrangements regarding her estate. Similarly, the note to Zeda's sons did not assert anything

26  whatsoever; it simply directed her sons to do something.

27       Thus, appellate counsel did not fail to assert an arguable issue that would have prevailed

28  in the California Supreme Court had it been asserted. To the contrary, counsel merely weeded out

08CV0767 BTM (WMc)

1    a meritless issue before asking the California Supreme Court to review the decision of the state court

2    of appeal.  Accordingly, the California Supreme Court's summary rejection of Petitioner's claim in

3    this regard was neither contrary to, nor did it involve an unreasonable application of, *Smith*.

4    Therefore, ground four should be denied.

08CV0767 BTM (WMc)

**CONCLUSION**

For the foregoing reasons, the Petition should be denied, the proceedings should be dismissed with prejudice, the Court should not order an evidentiary hearing, and the Court should not issue a certificate of appealability.

Dated:  August 19, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GARY W. SCHONS
Senior Assistant Attorney General

KEVIN VIENNA
Supervising Deputy Attorney General


s\Douglas P. Danzig

DOUGLAS P. DANZIG
Deputy Attorney General

Attorneys for Respondent

DPD:dp
70133969.wpd
SD2008801136

08CV0767 BTM (WMc)

23

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:  **Eugene Orange v. A. Hedgepeth, Warden, et al.**

No.:  **08cv0767-BTM (WMc)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter; my business address is 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA  92186-5266.

On <u>August 19, 2008</u>, I served the attached **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Diego, California, addressed as follows:

Eugene Orange
# V-064598
Kern Valley State Prison
P.O. Box 5103
Delano, CA  93216-5103

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 19, 2008, at San Diego, California.

| | |
|---|---|
| D. Perez | |
| Declarant | Signature |

70134016.wpd